## CHAUNCEY v. GAMBILL et al.

### No. 13861.

Court of Civil Appeals of Texas. Fort Worth.

March 17, 1939.

Rehearing Denied April 7, 1939.

T. R. Boone, of Wichita Falls, for plaintiff in error.

W. E. Fitzgerald, of Wichita Falls, for defendants in error.

SPEER, Justice.

W. B. Chauncey, as executor of the estate of E. G. Chauncey, deceased, sued Levi Gambill and his son, Albert Gambill, in a district court of Wichita County, Texas, for the cancellation of certain deeds and conveyances of real estate and an oil lease in Wichita and Archer Counties, and for a foreclosure of a judgment lien against the properties. Judgment was for defendants. Hence this appeal.

The parties will carry the same designation as in the trial court, and, when necessary, reference will be made to defendants by their respective names.

Plaintiff alleged that he held a note against Levi Gambill for the sum of $4,-618.04, bearing interest at the rate of 7% per annum, secured by a lien on real estate, not involved in this suit. The note was due December 31st, 1936. In May, 1937, he instituted suit on the note and recovered a judgment for debt and a foreclosure on the real estate, and sold it out for $500, crediting the amount on the judgment, leaving a balance unpaid of $4,194.22, plus interest and court costs. That on June 3rd, 1937, he procured and caused to be filed for record in Wichita and Archer Counties an abstract of his judgment. That Levi Gambill was, at all times during 1936 and 1937, insolvent, and that Albert Gambill had full knowledge of his father's insolvency.

Further allegations were made that defendants entered into a conspiracy on about December 31st, 1936, to cheat and defraud plaintiff out of his said debt and to make it impossible for him to collect it. That in furtherance of said conspiracy, the said Levi Gambill attempted, on said date, to convey unto his son, Albert Gambill, certain real estate situated in Wichita County, to-wit, an undivided one-half interest in Lot 3, Block 131, of the original Townsite of Wichita Falls, and an undivided oil and gas lease interest in lands in Archer County, and caused said conveyances to be placed of record in said counties.

Plaintiff charges that the conveyances were null and void, for the reasons they were made without a valuable consideration, and were made for the sole and only purpose of placing the property beyond the reach of plaintiff and for the sole and only purpose of defrauding him out of his debt. That because said conveyances were void, the property, at the time of the institution of this suit, belonged to Levi Gambill, and was subject to plaintiff's debt and judgment lien. He prayed for a cancellation of the deeds of conveyance, and a foreclosure of his lien, and for general relief.

Defendants answered by general and special exceptions and by general denial and special pleas. They specially denied that they had entered into any form of conspiracy to cheat and defraud plaintiff

out of any of his rights or remedies. That the conveyances from Levi Gambill, complained of by plaintiff, were bona fide transactions for a valuable consideration. That Levi Gambill was indebted to his son, Albert, in the approximate sum of $6,000, owing to him for services performed from the early part of 1931 to December 31st, 1936. That about the first of 1931, Levi Gambill entered into a contract and agreement with Albert Gambill, by the terms of which they would engage in the brokerage business in the East Texas oil field, and that Albert should have, as his part, one-fourth or 25 per cent of all net earnings of the firm, after deducting all losses and expenses of the home and business. That by virtue of the contract, Albert Gambill was emancipated from his minority. That during the time of the contractual relations between defendants, Levi Gambill was indebted to several persons, firms and corporations, and with the knowledge and consent of Albert, practically all the net earnings of the firm were used by Levi Gambill in payment of his debts to various creditors, including certain amounts to plaintiff. That said Levi Gambill had paid approximately $24,000 on his said debts during said time, evidencing his intention not to cheat or defraud his said creditors. Levi Gambill had promised Albert Gambill that he would repay to him the part of said earnings when he was able to do so. That on about December 30th, 1936, Levi Gambill, being indebted to Albert Gambill in approximately the sum of $6,000, under said contract, paid to him $4,500, by a conveyance of the properties mentioned in plaintiff's petition. They further alleged that the amount for which Levi Gambill received credit on said indebtedness was the reasonable cash market value of the property so conveyed.

Defendants alleged that Levi Gambill had paid large sums to his creditors during the time involved here and especially that he had paid to plaintiff large amounts on his indebtedness and detailed certain transactions had with plaintiff at a time when the improvements burned on the lot in Wichita Falls. We do not consider it necessary to set them out here.

A jury trial was had on special issues, and verdict was returned in all respects favorable to defendants. A judgment in favor of defendants was entered by the court, and this appeal was perfected by writ of error.

■ Plaintiff (the plaintiff in error) has presented this appeal upon what we consider an erroneous theory. It is contended that because Albert Gambill was a minor at the time he and his father entered into the contract, under which the alleged indebtedness accrued, and did not become of full age until January 13th, 1934, his earnings while a minor belonged to the father and could not form the basis for any part of the indebtedness claimed by them to have been paid when the controverted conveyances were made. It is further contended that his earnings after he became of age were shown by the testimony to have been liquidated by the father.

By his first proposition, plaintiff challenges the validity of the indebtedness by Levi Gambill to Albert Gambill, because the undisputed testimony shows he was a minor when the contract was made. It is contended by plaintiff that, since it is unquestionably true that Albert Gambill was a minor at the time he and his father entered into the contract, out of which the claimed indebtedness grew, all his earnings up until he became twenty-one belonged to his parents, and therefore could not form the basis of an indebtedness, such as found by the jury.

■ We cannot agree with plaintiff's contentions when applied to this case. The validity of the contract between the Gambills did not depend upon the ages of the respective parties. The facts disclose that Albert Gambill was a minor, a young man about eighteen years of age, who had just finished his college education, when he and his father entered into their contract. That contract was not void because of the nonage of Albert; but at most was voidable, and its binding effect could only be taken advantage of by him. If he had made such a contract with a stranger, having the sanction of his father, he could have enforced it. This contract being with the father, his consent would of necessity be implied. The undisputed record before us shows that Albert never attempted to repudiate the contract, but it is equally clear that he continued to work under it for two years after he became of age; these acts would unquestionably amount to a ratification by him. We know of no reason why the father could not make any contract with his minor son that a stranger could make. Such contracts between father and son should, however, be closely scrutinized to detect fraud,

if such existed. The contract in this case was not one that would be deemed in law void. Those contracts made by a minor which are considered void are mentioned in 23 Tex.Jur., p. 716, sect. 22. There it is said: "Thus it has been stated generally that all contracts that are based on actual fraud or on an illegal consideration or which are against public policy, or incompatible with any confidential relationship that may exist between the minor and another, are mere nullities." In the same treatise, at p. 728, sect. 22, it is said: "While an infant's contract of partnership is voidable and may be rescinded at his election, it is settled that a parent who forms a partnership with his minor son will be bound by the agreement * * *". Again it is stated, in the same volume, at p. 733, sect. 40: "The right of a minor to disaffirm his deed or contract is a personal one, in the nature of a privilege, to be exercised or not at his option; and so long as the minor does not claim this privilege neither other parties to the contract or strangers will be permitted to assert its invalidity." See, also, Peck v. Cain, 27 Tex.Civ.App. 38, 63 S.W. 177, writ refused; Clemmer v. Price, 59 Tex. Civ.App. 84, 125 S.W. 604, writ refused.

As hereinabove shown, this is an action to set aside a deed from father to son, because the conveyance was made without a valuable consideration, and because it was made with the intention and for the sole purpose of defrauding plaintiff out of his debt.

The statutory provisions relied upon by plaintiff are found in articles 3996, Vernon's Ann.Civ.St., and 3997, R.C.S.

By article 3996, supra, it is provided that every conveyance of real estate, made with the intent to delay, hinder or defraud creditors of what they are lawfully entitled to, is void. But it is therein further stated that the title of the purchaser, for a valuable consideration, is not affected unless it appears that such purchaser had notice of the fraudulent intent of his grantor.

Insofar as applicable to this case, article 3997, supra, reads: "Every * * * conveyance, [or] assignment * * * which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts. * * *"

Under each statute pointed out, the contingency upon which the conveyance becomes void depends upon whether or not it was made for a valuable consideration. Under article 3996, even though there was a valuable consideration for the conveyance, if it is made to appear that the purchaser had knowledge of the fraudulent intent of the grantor, his title would be affected thereby. By the answer to special issue 3 it was found that he had no such notice. In fact, by answer to issue 2, it was found that Levi Gambill had no such intention.

The record indisputably shows that Levi Gambill made the conveyances to Albert Gambill in consideration of a credit of $4,500 on an indebtedness claimed by both parties to be owing by grantor to grantee. Such transaction, if true, would constitute a valuable consideration. But the transaction would be subject to attack by a creditor of grantor, if made with intent to defraud the creditor and the grantee had notice of such fraudulent intent. Before plaintiff could prevail in his action to set aside the conveyances upon the grounds alleged, it was incumbent upon him to establish by the evidence and procure a jury finding on these points.

Upon the issues submitted and answered, it was found: (2) That grantor was indebted to the grantee in a sum between $5,000 and $6,000, at the date of the conveyances. (3) That the conveyances were not made by Levi Gambill with the intent to defraud, hinder or delay plaintiff in the collection of his debt. (4) That Albert Gambill had no notice at the time he accepted said conveyances, of any intention on the part of grantor to defraud, hinder or delay plaintiff in collecting his debt. The jury further found in response to special issues that the two pieces of property conveyed were of the reasonable market value of $4,355, at that time. The credit allowed by grantee on his indebtedness was $4,500.

The plaintiff does not attack, for lack of support in the evidence, the answers of the jury to special issue No. 2, that Levi Gambill did not intend to hinder, delay or defraud plaintiff by his conveyance to the son, nor to issue No. 3, where it was found that Albert Gambill had no notice of that intention on the part of his father, if any such intention existed at the time.

No objections or exceptions were presented by either party to the issues submitted, nor were there any requests by either for additional issues. There is ample evidence in the record to support the findings of the jury on the inquiries made.

Plaintiff's counsel urge, under a second proposition, that because defendants plead that by virtue of the contract made between the father and son, the latter was emancipated from his minority, and because the facts and circumstances were testified to alone by interested parties, the question was an issuable one to be determined by the jury upon the submission of a special issue or inquiry. That it was a defensive matter plead by defendants, and they not having requested an issue thereon, it was waived. They cite numerous authorities supporting the contention, if applicable. But we do not consider that to be the question for determination. The point is, whether or not the father was indebted to the son at the time of the conveyances, to the end that it can be ascertained if there was a valuable consideration moving in the transaction. Whether or not the contract was made between the two did depend upon the testimony of the interested parties, they being Levi Gambill, his wife and their son, Albert Gambill. By the jury verdict, as we have seen, it was found that the indebtedness did exist. As we view it, it was immaterial to any point in this case, whether or not the parents of Albert Gambill emancipated him. Regardless of how such an inquiry, if made, had been answered, young Gambill could have made a binding contract with his father, such as was claimed, and he alone could have avoided it. Under the circumstances testified to by him and his parents, he could have enforced it against his father, if the latter had attempted to defeat it. We see no merit in the contentions of plaintiff in the respects discussed, and the assignments are overruled.

The seventh proposition urged is that the verdict of the jury, to the effect that Albert Gambill did not know his father was insolvent when he took the conveyances in question, is contrary to the undisputed evidence.

Special Issue No. 11 and its answer were: "Do you find from a preponderance of the evidence that Albert Gambill knew on December 30th, 1936 (the date of the conveyances) that his father, Levi Gambill, was insolvent, if you have so found, as that term has been defined to you herein?" The answer was "No."

Plaintiff's assertion in his proposition that the answer of the jury was in direct conflict with the undisputed evidence is, we think, too strong.

Defendant, Albert Gambill, testified on cross examination, in regard to these matters, and said that he knew his father owed debts, and in a general way he knew what property his father had, but did not know whether the property would sell for enough to pay the debts or not; that this condition was true from 1931 to 1934; that during the latter year conditions were supposed to have improved, and even after that time, it all depended upon what his father could have sold his property for as to whether it would have been sufficient to pay his debts. He was asked this question: "In 1936, you knew that he did not have sufficient property to pay his debts?" Answer: "I don't know." Question: "In December of 1936, you knew that he did not have sufficient property to pay his debts?" Answer: "No, I don't know it." Question: "Do you know he did?" Answer: "No." He further testified that he typed a letter to Mr. Chauncey, stating that his father did not have money or property sufficient to pay his debts, but that he had in mind that it was confined to money on hand, he didn't remember whether or not his father referred, in that letter, to the property; that he did not know if the property was to be sold at quick sale, that is to go out and sell it on the market, if it would bring enough to pay his debts; he did not know if there was much market for such property; his father did not have property in which there was an equity above the debt it secured, to pay his debts.

Parts of the witness' testimony would have supported a finding by the jury, either that he did or did not know of his father's insolvency. It all depended upon whether or not the property was salable on the market. The jury, no doubt, took into consideration the nature of the property and economic conditions revealed by the record, and chose to answer it as they did.

Moreover, we do not consider that the question was material to any issue in this case; especially in view of the jury's answer that Levi Gambill was indebted to Albert Gambill at the time of the con-

veyance; for clearly there was a consideration deemed valuable in law when credit was given on an indebtedness for the deeds. If it be contended that the deed sought to be canceled was void, under Article 3996, supra, then it will be noted that when a conveyance is for a valuable consideration, the grantee's title is only affected if it appears "that he had notice of the fraudulent intent of his immediate grantor; * * *". If plaintiff relies upon Article 3997, supra, as indicated in his brief, then it is not material under that statute whether or not grantee had notice of his grantor's insolvency, if the conveyance was for a valuable consideration. But, as we have seen, the conveyances were made upon a valuable consideration, if the verdict of the jury is correct. This eliminates the necessity for an inquiry as to notice to the grantee of all matters except the intention of grantor to defraud and hinder his creditors. This question was not embraced in the issue complained of. To put it another way, if the verdict that grantor was indebted to grantee at the time of the conveyance was correct, then there was a valuable consideration for the conveyance, and grantee's knowledge of grantor's insolvency was immaterial, and if answered affirmatively, would not have defeated the validity of the conveyance.

█ █ To concede, as we must, from the verdict of the jury, that Albert Gambill was a creditor of his father, Levi Gambill, at the time of the conveyances, in a sum greater than the value of the property conveyed, and the undisputed evidence which shows a credit was allowed on that indebtedness for a sum equal to, if not in excess of, the value of the property conveyed, it cannot be said that the deed should be set aside as void for fraud, at the instance of another creditor. A showing that a preference to Albert Gambill was given over plaintiff is no ground for such avoidance. The authorities supporting this statement are so numerous we decline to cite them all, but content ourselves to quote from 20 Tex.Jur., p. 422 and 423, sect. 65, which reads: "It is an elementary principle, reiterated in a multiple of cases, that in the absence of a law declaring preferences invalid every debtor, though insolvent, has the legal right to pay one or more of his just debts with any money or property he has, although the transaction may be to delay other creditors and to withdraw from their reach property which they might otherwise subject to the payment of their debts. This right is contingent, of course, upon the debtor conveying no more property than is reasonably sufficient to satisfy the debt, and upon the transaction being bona fide and not merely colorable." For the reasons stated, we see no merit in the contention and the proposition is overruled.

We shall later show in this discussion that many of the propositions of plaintiff are immaterial in a disposition of this appeal, yet, as we view it, we think we should give attention just here to his eleventh proposition, which challenges the sufficiency of the jury's answer to Special Issue No. 2, in which it is claimed the answer is too vague, uncertain and indefinite, to form the basis of a judgment.

That special issue and its answer read: "Special Issue No. 2. What do you find from a preponderance of the evidence was the amount that Levi Gambill owed Albert Gambill, if anything, at the date of delivery of the deeds introduced in evidence, to-wit, on December 30th, 1936?" Answer: "Between $5,000.00 and $6,000.00."

█ If the inquiry was for the purpose of determining the amount for which a judgment should be rendered as between litigants when the amount thereof was necessary to be determined, there would be merit in the contention that the verdict was too uncertain, but such is not the case here. The answer given to the issue may be said to be definite and certain, at least to the extent of $5,000.00, the least amount named. That amount exceeds the consideration paid by Albert Gambill in the conveyance, as well also the reasonable cash value of the property conveyed, as found by the jury. The objection raised by the proposition must be overruled.

█ Other parts of the verdict are attacked by plaintiff in propositions 3, 4, 5, 6, 8, 9, 10 and 12. We shall refer to them briefly, but we do not consider that any of them are material to a disposition of the case. They each refer to special issues and their answers pertaining to the earnings of Albert Gambill between January 13th, 1934 (when he became of age) and the termination of the contract between him and his father, on December 31st, 1936.

Those parts of the verdict referred to in these propositions, as shown by the special

issues and their answers, were: (7) Levi Gambill and Albert Gambill earned from January 12th, 1934, to December 30th, 1936, between $27,000 and $28,000. (8) Levi Gambill and Albert Gambill expended for losses and expenses from January 12th, 1934, to December 30th, 1936, between $10,000 and $11,000. (9) Albert Gambill received no cash from Levi Gambill between January 13th, 1934, and December 30th, 1936.

From what we have already said, it is obvious that not one of the findings by the jury last above mentioned were pertinent to the issues in this case. If we are correct in our conclusions that Albert Gambill and his father had a right to enter into the contract claimed by them, which resulted in an indebtedness to Albert, as found by the jury, the amounts earned entirely after he became of age, the amount expended and whether or not he received any cash in that time, could at most be only evidentiary matters, tending to affect the amount of the indebtedness, if any, owing by Levi Gambill to Albert.

These issues being immaterial to a determination of plaintiff's right to have the conveyances canceled for lack of consideration and for a fraudulent intent to deprive him of his right to subject the property to his debt, as set out in his pleadings, we think their submission and the answers given need not be further noticed here.

We see no error in the judgment entered, and it is therefore affirmed.