MERLIN QUINN ET AL V. JAKE DUPREE

No. A-5905. Decided June 19, 1957.
Rehearing overruled July 17, 1957.
(303 S.W. 2d Series 769.)

442

*Florence, Florence & Garrison, C. E. Florence,* of Gilmer, *Woodrow H. Edwards,* of Mt. Vernon, for Merlin Quinn, *C. M. Winkle,* of Pittsburg, for the First National Bank of Pittsburg, Texas, and *Albert T. Tarbutton,* for Lone Star Steel Co., of Lonestar, all petitioners.

*Fulton, Hancock & McClain* and *Hollie G. McClain,* all of Gilmer, for respondents.

## PER CURIAM

This is a controversy between creditors over money which accrued to their debtor, Merlin Quinn, under his contract to haul ore for Lone Star Steel Company. On November 14, 1953, Jake Dupree, respondent, recovered judgment against Quinn for $5,464.80. There is a credit of $2,000.00 on the judgment, and the balance unpaid thereon is $3,464.80. On January 6, 1954, Quinn executed to the Pittsburg National Bank an assignment which is set out in full in the opinion of the Court of Civil Appeals. After reciting that the assignor has a contract to haul ore for Lone Star, is indebted to the bank for trucks, accessories and borrowed money, and may become indebted to it in various sums thereafter, and that the bank has requested additional security for the indebtedness, the instrument provides that "* * * I, Merlin Quinn, for and in consideration of securing my

indebtedness due the * * * Bank of * * * as of this date, as well as in order to secure the payment of any indebtedness I may hereafter owe to the * * * Bank * * * do hereby unconditionally transfer, assign and set over to the * * * Bank * * * any and all sums of money that may be due and owing to me by Lone Star Steel Company under and by virtue of my contract with it * * * and hereby authorize and direct Lone Star Steel Company * * * to forward any and all sums of money due and payable to me to the * * * Bank * * *."

On March 6, 1954, and again on April 5, 1955, respondent sued out writs of garnishment against Lone Star, which answered that it had $1,963.20 when the first writ was served, and $3,084.91 at the time the second writ was served, that had accrued under its contract with Quinn and which was payable to the bank under the assignment. The bank intervened, claiming a right to recover the amount Quinn owed it at the time. Quinn also answered and denied respondent's right to any of the money. Respondent controverted the garnishee's answers, and attacked the assignment on a number of grounds, which will be discussed later in the opinion. The Government asserted a claim of $923.20 for unpaid transportation taxes owing by Quinn.

After a trial to the court without the intervention of a jury, judgment was entered allocating the $3,084.91 as follows: (1) $923.20 plus interest to the Government; (2) $1,274.18 plus interest to the bank; (3) $125.00 to the garnishee as its attorney's fees; (4) court costs; and (5) the balance to respondent. All parties recognize that the $923.20 owing to the Government is a preference claim. The Court of Civil Appeals concluded that the assignment is void for a number of reasons, and modified the judgment of the trial court so as to allow the bank no recovery out of the fund in controversy. 290 S.W. 2d 329. The bank, Quinn and Lone Star are petitioners in this Court, but the main dispute is between the bank and respondent and turns on the validity of the assignment.

We shall assume, as the parties seem to do, that the assignment was intended to cover money thereafter accruing, as well as any then owing, to Quinn under his contract with Lone Star. The Court of Civil Appeals held as a matter of law that the attempted assignment was void because: (1) there was no consideration therefor; (2) it was given with intent to delay, hinder and defraud creditors; and (3) the debtor never lost control of

the funds. Petitioners attack each of these holdings by an appropriate point of error.

A brief statement of the evidence is necessary. When Quinn gave the assignment, he owed the bank an overdraft of $46.17 and a balance of $2,974.22 on notes secured by chattel mortgages on trucks and equipment. After the assignment was executed, the bank made him three additional loans aggregating $1,764.35 and from time to time carried overdrafts ranging from less than $50.00 to more than $150.00. Each of the additional loans was secured by a chattel mortgage. Two of these were paid prior to the trial, and the security for the third has been sold and the proceeds applied on the note. The total amount owing by Quinn to the bank at the time of trial was $1,274.18, and the bank has not foreclosed its other chattel mortgages.

Between the time of the assignment and the service of the writ of garnishment, the bank received $3,799.04 from Lone Star that had accrued under Quinn's hauling contract. $347.02 of this amount was applied on Quinn's indebtedness to the bank, and the remaining $3,452.02 was either paid to Quinn in cash or deposited to his credit. The funds were received by the bank in seven different checks over a period of about three months. In some instances the payments then due by Quinn to the bank were deducted from the money received and the balance was paid or credited to him. At other times the entire amount was turned over to the debtor, who then gave the bank his check for the payments due. On one occasion there was nothing due the bank and the entire check was delivered to and retained by Quinn.

The vice-president of the bank testified that at the time the assignment was made he did not consider the bank's security sufficient to take care of the indebtedness; that Quinn was being pressed by the bank to clean up his indebtedness or give further security; that the debtor requested the bank to carry an overdraft, saying that his equipment was old and the tires playing out, and that it looked like it wouldn't pay off; that Quinn was told that the bank would help him carry on his operations and if necessary extend the time on his chattel mortgages provided he would assign to the bank his funds from Lone Star; and that the making of further loans was contemplated by the bank and Quinn when the assignment was taken.

On the question of consideration respondent cites First State

Bank of Aransas Pass v. Fuson, Texas Civ. App., 185 S.W. 1042 (no writ). The creditor there had a written assignment but sought to recover by virtue of a prior oral agreement to assign. After observing that the oral agreement was merged in the written instrument, the court went on to say that there was no extension of the debt and consequently no consideration for the assignment. Since the assignee apparently was permitted to recover all that he was entitled to receive under the written assignment, the latter statement probably had reference to the oral agreement.

■ However that may be, the assignment here was executed as collateral security for indebtedness then or thereafter owing to the bank by Quinn. A pre-existing liability is sufficient consideration to support a mortgage given as security therefor, and there need not be a new consideration at the time of making the mortgage. See 59 C.J.S. Mortgages, Sec. 91, p. 136. The satisfaction of an antecedent debt is also deemed a valuable consideration within the meaning of our statutes on fraudulent conveyances. See Adams v. Williams, 112 Texas 469, 248 S.W. 673; Chauncey v. Gambill, Texas Civ. App., 126 S.W. 2d 775 (writ dis. judg. cor.); Mewhinney Mercantile Co. v. Goodnight, Texas Civ. App., 135 S.W. 2d 230 (no writ). It seems clear that Quinn's pre-existing indebtedness to the bank as well as the loans subsequently made to him are sufficient consideration to support the assignment.

■ The Court of Civil Appeals based its holding primarily upon the proposition that Quinn never lost control of the money. It is generally held that an attempted assignment is fraudulent in law and void if there is any reservation by the assignor of dominion over the subject matter that is inconsistent with an effective disposition of title or creation of a lien. The right of control may be reserved in the instrument of assignment, or by an agreement in pais, oral or written, or may be deduced from the acts and conduct of the parties notwithstanding a written agreement expressly excluding it. See Mitchell v. Scott, Texas Civ. App., 14 S.W. 2d 916 (no writ); Wilson v. Poland, Texas Civ. App., 14 S.W. 2d 890 (no writ); Benedict v. Ratner, 268 U.S. 353, 45 Sup. Ct. 566, 69 L. Ed. 991; Lee v. State Bank & Trust Co., 2nd Cir., 38 Fed. 2d 45. The cases make it clear, however, that this doctrine applies only when the power of dominion over the subject matter of the assignment is reserved to the assignor by the agreement of the parties.

Where the reservation is established by the terms of the

instrument or by the uncontradicted evidence, the assignment may be held void as a matter of law. But here there was no express reservation of control by Quinn, and there is no direct evidence of an agreement or understanding to that effect. Respondent argues that it can be deduced from the conduct of the parties in permitting the debtor to have most of the money received by the bank from Lone Star, but this is an inference which can be drawn only by the trier of fact.

The judgment of the trial court upholds the assignment, and no findings of fact were requested or filed. It must be presumed then that the trial court resolved in the bank's favor every issue of fact raised by the evidence, and we must view the evidence in the light most favorable to these findings, disregarding all that is contrary thereto. North East Texas Motor Lines v. Dickson, 148 Texas 35, 219 S.W. 2d 795, 11 A.L.R. 2d 1065. The mere fact that the assignee of a chose in action collects and then permtis the assignor to have part of the money does not establish conclusively that there was a prior understanding that this would be done or that the assignor had the right to direct the application of the money. If Blue v. Herkimer National Bank, 2nd Cir., 30 Fed. 2d 256, holds to the contrary, we do not regard the decision as sound. The vice-president of the bank testified that he was told by Quinn that the money was needed to pay salaries and operating expenses, and that the debtor could not have stayed in business if the bank had retained and applied on his indebtedness all money received from Lone Star. On the record in this case, the trial court was entitled to conclude, as it evidently did, that the money was not released to Quinn because of a prior agreement between the parties that this would be done, but that the bank permitted the debtor to have the funds simply as a matter of grace to enable him to stay in business. There is no basis then for applying the rule of the cases mentioned above.

The Court of Civil Appeals also held as a matter of law that the assignment was made with intent to hinder, delay and defraud creditors. Respondent points to the following circumstances as badges of fraud: (1) the admission of the vice-president of the bank that Quinn was insolvent when the assignment was taken; (2) the amount that will have passed through the hands of the bank under the holding of the trial court is disproportionate to the amount owed; (3) the surrender to the debtor of most of the funds received under the assignment; (4) the execution of the assignment less than sixty days after respondent obtained his judgment; and (5) the failure of the

bank to foreclose all of the chattel mortgages securing its indebtedness.

■ Every payment of a debt by an insolvent, whether made in money or property, tends in a popular sense to hinder, delay or defraud other creditors in the collection of their respective debts. In the same sense, the taking of a lien on part of an insolvent's property to secure a debt necessarily has the effect of hindering other creditors in the enforcement of payment of their debts by a sale of the entire interest in the property on which the lien is given. In the absence of a law declaring preferences invalid, however, every debtor has the right to pay or secure one or more of his just debts with any property he has, provided that no more property is transferred than is reasonably necessary to pay or secure the debt. A mere intention to prefer one creditor over the other thus will not vitiate the transaction, and the conveyance or security instrument will not be held void as to creditors unless it was executed with fraudulent intent or amount to a fraud in law. See Ellis v. Valentine & Son, 65 Texas 532; Adams v. Williams, 112 Texas 469, 248 S.W. 673.

■ Whether a conveyance or lien instrument was made with intent to defraud creditors is ordinarily a question for the jury or the court passing on the fact. See King v. Russell, 40 Texas 124; Kerr v. Hutchins, 46 Texas 384. And the burden of proving fraudulent intent was on the respondent. Tillman v. Heller, 78 Texas 597, 14 S.W. 700, 11 L.R.A. 628, 22 Am. St. Rep. 77. As pointed out in Van Hook v. Walton, 28 Texas 59, if fraudulent intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction. There appears to be little doubt that the evidence in this case would support a finding that the assignment was made with fraudulent intent, but it cannot be said that such intent has been established as a matter of law.

The record does not show that the property covered by the bank's chattel mortgages is exempt from forced sale, and there is no basis for saying that the assignment appropriates to the bank's debts property which would otherwise be subject to the claims of creditors and frees property which they cannot reach. Nor do we think that the case falls within the rule announced in Gallagher v. Goldfrank, 75 Texas 562, 12 S.W. 964. It was

there said that while a creditor may take a mortgage upon his debtor's property to secure his debt even though the latter may be in failing circumstances, if at the same time he advances his debtor a sum of money and leaves it subject to the latter's control and attempts to secure its repayment in the same transaction, the mortgage is fraudulent in law and void.

The difference between the decision last cited and the present case is this: There the effect of the transaction was to place beyond the reach of creditors existing property which otherwise could have been subjected to the payment of their claims. Quinn's assignment recites that under his contract with Lone Star he is to receive $0.38 per long ton of ore hauled. The contract itself had little or no value, and the only property which could be subjected to claims of creditors would be the amounts owing to Quinn for services performed thereunder. There is no evidence to indicate that the amounts loaned to Quinn after the assignment and the money he was allowed to take out of the funds received from Lone Star were more than was reasonably necessary to enable him to continue operations under the contract. Where the subject matter of the assignment is money payable under a continuing contract of this character, it should not be said that the transaction is fraudulent per se simply because the creditor continues to advance to his debtor enough money to perform his obligations under the contract. This may be the only way the debtor can expect to reap any benefits from the contract and thereby increase the assets available for paying his creditors.

■ This disposes of all of the grounds upon which the Court of Civil Appeals reversed the judgment of the trial court. Quinn argues that the latter court erred in upholding the assignment merely to the point where the bank suffers no loss. We assume he means that the entire fund should be paid to the bank so it may deliver any surplus to him. There is, of course, no merit in this contention. The assignment was given as security for the payment of his debts to the bank. Any balance remaining after payment of same belongs to him and is subject to the claims of his creditors. Petitioners' remaining points, which challenge the propriety of docketing the two garnishment proceedings under the same number and say that respondent should recover nothing because he contended in the trial court that Quinn had no interest in the suit, present no reversible error and are accordingly overruled.

450

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered June 19, 1957.

Rehearing overruled July 17, 1957.