**Opinion issued March 5, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00966-CV

_____

**THE WATERHILL COMPANY, LLC, JONATHAN WASSERBERG, AND JASON FELT, Appellants**

**V.**

**Y HOANG DO AND QUY LINH NGO DO Appellees**

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2008-21558

## MEMORANDUM OPINION

Appellants, The Waterhill Company, LLC ("Waterhill"), Jonathan Wasserberg, and Jason Felt, challenge the trial court's rendition of summary

judgment in favor of appellees, Y Hoang Do and Quy Linh Ngo Do (the "Dos"), in the Dos' suit for violations of the Texas Trust Fund Act,[1] breach of contract, fraud, fraudulent transfer,[2] and conversion. In seven issues, Waterhill, Wasserberg, and Felt contend that the trial court erred in striking their amended pleadings and granting the Dos' summary-judgment motion.

We reverse and remand.

## Background

In their sixth amended petition, the Dos alleged that on March 30, 2005, they entered into a "Construction Agreement" with Waterhill to build the Dos a residence at 12 Farnham Park Drive for $1.313 million. On October 9, 2007, the Dos and Waterhill executed an "Addendum to the Waterhill Companies Limited Construction Agreement," which adjusted the total construction cost of the residence to $1,819,320.00. The Addendum provided that "construction of the residence should be completed at the end of a twelve month period from the time the foundation is completed. Change orders may extend construction time."

In 2007, Waterhill submitted to the Dos a draw request for $372,933.04, and on January 4, 2008, it submitted to the Dos a draw request of $72,223.54, with $57,543.00 of the request designated to be paid to Boswell Construction, L.P.

---

[1] *See* TEX. PROP. CODE ANN. § 162.031 (Vernon Supp. 2012).

[2] *See* TEX. BUS. & COM. CODE ANN. § 24.005(a) (Vernon 2009).

("Boswell"). In its January 4, 2008 request, Waterhill certified that "all suppliers and subcontractors had been paid for work and materials on previous draws." However, the Dos subsequently received a letter from Boswell, informing them that Waterhill owed it $56,100 for work done on the Dos' residence. The Dos further alleged that Waterhill had failed to pay a steel contractor, KV Weld, Inc. ("KV Weld") $48,455.00 for work done on the residence. And Waterhill then "abandoned all activities on the property without excuse and materially breached the[ir] Agreement by the repeated and extensive construction delays." Finally, the Dos alleged that Waterhill breached their contract by failing to deliver "travertine tiles" pursuant to another request and converting the tiles for Waterhill's own use.

In their original answer to the Dos' original petition, appellants generally denied the Dos' claims. After the Dos filed several amended petitions, appellants filed an amended answer, raising various affirmative defenses and counterclaims.[3] Appellants then filed a second amended answer, generally denying the Dos' allegations and raising twenty-four affirmative defenses. The Dos filed a motion to strike appellants' amended answers, asserting that appellants had "stalled, delayed and used the arbitration process to avoid discovery and trial." The Dos asserted that appellants had "avoided the first trial at the last minute by demanding

---

[3]    Waterhill's first amended answer does not appear in the record. However, Waterhill's brief and the Dos' "Motion to Strike [Waterhill's] Amended Answer and Original Counterclaim" indicate that the first amended answer was filed on August 20, 2010.

3

arbitration" and then "avoided the arbitration trial by refusing the pay the arbitrator." They also argued that appellants' "late filed answer and counterclaim should be stricken" because it was filed "after 28 months of litigation and only 23 days before trial" and Waterhill had not disclosed the affirmative defenses during discovery. The trial court granted the Dos' motion and struck Waterhill's first and second amended answers.

In their summary-judgment motion, the Dos asserted that it was "undisputed" that appellants had breached their construction contract by failing to "complete the construction of the home within the contract period," "properly construct the home," and "pay subcontractor[s] as per the parties' agreement." The Dos attached to their motion a copy of a contract that they entered with Mike Stahl to complete their residence at a cost of $1,765,506.00. Asserting that they had paid appellants $569,589.96, the Dos sought breach-of-contract damages of $524,326.49.

The Dos further argued that Felt and Wasserberg were individually liable for Waterhill's debts and obligations because they "acted as general partners and held themselves out as general partners," "participated in the daily control of the business," and "admitted that they were in fact general partners of Waterhill." They argued that appellants violated the Texas Trust Fund Act, committed fraud, and converted the Dos' funds because appellants received draw request payments

4

from the Dos for construction of their residence, but "commingled those specific trust funds . . . by depositing [them] into a general bank account." The Dos asserted that appellants "misappropriated, converted or misapplied over $108,000.00 in trust funds," "used the funds to pay their debts on other projects," and "converted [the Dos'] tiles . . .[,] causing damages in the amount of $10,665.45 to replace the converted tiles." And the Dos sought attorney's fees in the amount of $43,575 and punitive damages in the amount of $200,000.00.

The Dos attached to their summary-judgment motion the affidavit of Y Hoang, who testified that he and his wife, Ling Ngo, had met with Wasserberg and Felt prior to their signing of the construction contract with Waterhill. At the meeting, Wasserberg and Felt told Y Hoang and Ngo that they were Waterhill's general partners and "all funds deposited or transferred to them from [the Dos] would be used only on" the construction of the Dos' residence. Hoang further testified that Waterhill "never completed the construction of [the] home within the time period set forth in the contract," "walked off the jobsite in February 2008 without cause," and "refused to complete the work set forth in the contract and pay the subcontractors."

The Dos also attached to their motion the depositions of Wasserberg and Felt. Wasserberg testified that he was "an owner of Waterhill Companies Limited in a general partner capacity" and Felt was a "co-managing partner" who

5

"oversee[s] bank relationships." Felt testified that he was a "managing partner" of Canary Financial, LLC ("Canary Financial"), which was "one of the general partners of Waterhill." He explained that he was "in charge of securing financing for [Waterhill] and "other various banking relations."

Finally, the Dos attached to their motion the affidavit of Jack Arnold, the president of KV Weld, who testified that his company was hired by Waterhill to "provide the structural steel" for construction of the Dos' residence. Wasserberg told Arnold that "he was the person who controlled the day to [day] activities of [Waterhill]." Arnold noted that "KV Weld submitted an invoice and received the sum of $48,455.00 . . . to be used at the Dos' residence," but Wasserberg directed Arnold to "apply" the money to "prior debts" that Waterhill owed to KV Weld.

In their response[4] to the Dos' summary-judgment motion, appellants asserted that genuine issues of material fact precluded granting the Dos summary judgment and "the facts of this case will show that [the Dos] actually breached the contract first" by "making numerous revisions to the construction plans" and unreasonable demands, which "caused significant delays." Appellants also asserted that the Dos first terminated the contract without just cause, "preemptively

---

[4]    In their response, appellants asserted that the Dos had previously "moved several times for summary judgment." Appellants asked to "incorporate the responses they ha[d] made in previous motions" and "incorporate by reference" the exhibits it had "previously offered." However, only appellants' December 3, 2010 response is included in the record.

sued [them] in an attempt to get out of the contract," and genuine issues of material fact existed as to appellants' "intent." Finally, appellants asserted that the Dos' summary-judgment motion was "inadequately supported" and did not "conclusively establish breach" or "intent."

Appellants attached the affidavits of Felt and Wasserberg to their response. Felt testified that after Waterhill had committed to construct the Dos' residence, the Dos "decided they did not like many things about their plans," causing "massive timing delays." Wasserberg testified that he was the president of Wasserberg Investment, Inc., Waterhill's other general partner. Both Wasserberg and Felt testified that they did not make "any misrepresentations to [the Dos]" and they had no "intent to deceive the Dos or act in any manner less than forthright and honest."[5]

The trial court granted the Dos' summary-judgment motion in an "Interlocutory Judgment" on "liability and actual damages on all claims." It ordered Waterhill, Wasserberg, and Felt jointly and severally liable for $684,239 in damages and $43,575 in attorney's fees. The trial court denied the Dos summary judgment on their claim for punitive damages. After the Dos nonsuited their punitive-damages claim, the trial court entered a final judgment.

---

[5] In their response, appellants also make reference to an "Email terminating contract," which they asserted established that the Dos first terminated the contract. However, this exhibit does not appear in the appellate record and appellants make no reference to the exhibit in their briefing to this Court.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

## Summary Judgment

In their first issue, appellants argue that the trial court erred in granting summary judgment against Wasserberg and Felt individually because "the Texas Trust Fund Act does not apply to this case." *See* TEX. PROP. CODE ANN. § 162.031 (Vernon Supp. 2012). In their third, fourth, and sixth issues, appellants complain that the Dos have not established their claims for fraud, fraudulent transfer,

8

conversion, and breach of contract as a matter of law. In their second and fifth issues, appellants complain that the evidence is insufficient to hold Wasserberg and Felt liable individually as Waterhill's general partners for damages or attorney's fees. And, in their seventh issue, appellants complain that the trial court erred in striking their pleadings.

*Fraud*

In their third issue, appellants argue that the trial court erred in entering summary judgment on the Dos' fraud claim because there is no evidence that Felt and Wasserberg "made promises of future performance with no intent of performing." They note that, in their affidavits, both Felt and Wasserberg "specifically denied" having "fraudulent intent."

The elements of common law fraud are (1) that a speaker made a material representation; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

An action for fraud pertaining to a promise of future performance requires, as relevant here, a showing that the promisor, at the time that the promise was

9

made, had no intention of performing the act. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 48 (Tex. 1988). The mere failure to perform under a contract does not constitute sufficient evidence of fraud. *Id.* Rather, a plaintiff alleging a fraud claim must demonstrate that the defendant, at the time that he or she made the representation, had intent to deceive and had no intent to perform; the evidence presented must be relevant to the promisor's intent at the time that the representation was made. *Id.*

To support their fraud claim, the Dos refer to two draw requests submitted to them by Waterhill: one for it to pay KV Weld $58,146 and the other for it to pay Boswell $56,100. The Dos assert that copies of Waterhill's bank accounts establish that appellants "commingled those specific funds into their general bank account." They argue that appellants made a "material misrepresentation" because, prior to execution of the parties' construction contract, Wasserberg and Felt told Y Hoang "that all funds deposited or transferred to them from [the Dos or their bank] would be used only on the property located at 12 Farnham Park Drive, Houston, Texas."[6] The Dos also note that Arnold testified that he was instructed

---

[6] The Dos also cite the Addendum to the Construction Agreement as an example of a material misrepresentation that appellants would only apply the Dos' draw requests to work on the Farnham Park Drive property. However, with respect to draw requests, the Addendum only provides that "[a]ll draws will be paid upon the satisfactory completion of the approved services, jobs, construction phases and/or satisfactory delivery of the approved/purchased materials, items, supplies."

by Wasserberg to apply a $48,455 payment from the Dos to "prior debts between [Waterhill] and KV Weld."

The Dos' only evidence in support of their assertion that appellants "commingled" their draw request payments into their "general bank account" are statements from a "project account" in Waterhill's name at Sterling Bank. However, these documents only show a list of various wire transfers and deposits, with no indication as to who made the transfers or deposits. Furthermore, both Wasserberg and Felt testified that they "never made any misrepresentations to [Y Hoang]" and did not have "any intent to deceive the Dos or act in a manner less than forthright and honest." In his deposition testimony, Wasserberg denied that any "personal checks" or payments from other clients were deposited into the project account. Felt also denied that Waterhill "would take money from several different clients and deposit it into the same account." And, most importantly, the Dos cite to no evidence that at the time that any alleged misrepresentations were made, Wasserberg or Felt knew that the representations were false or recklessly made the representations without knowledge of their truth. *See Grainger v. Western Cas. Life Ins. Co.*, 930 S.W.2d 609, 615 (Tex. App.—Houston [1st Dist.] 1996, pet. denied) ("Issues of intent and knowledge are not susceptible to being readily controverted and are inappropriate for summary judgment."). We conclude that genuine issues of material fact exist regarding whether appellants made any

11

misrepresentations or knew that any such misrepresentations were false at the time that they were made. Accordingly, we hold that the trial court erred in granting summary judgment to the Dos on their fraud claim.

We sustain appellants' third issue.

**Fraudulent Transfer and Conversion**

In their fourth issue, appellants complain that the trial court erred in entering summary judgment on the Dos' fraudulent transfer and conversion claims.

Section 24.005 of Texas Uniform Fraudulent Transfer Act ("TUFTA") provides that:

> (a) A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made[,] . . . if the debtor made the transfer . . . :
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) without receiving a reasonably equivalent value in exchange for the transfer[,] . . . and the debtor:
> >
> > > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12

TEX. BUS. & COM. CODE ANN. § 24.005(a) (Vernon 2009). The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A creditor has the burden to prove a debtor's fraudulent intent; such intent must be affirmatively shown and will not be presumed. *Sterquell v. Scott*, 140 S.W.3d 453, 460 (Tex. App.—Amarillo 2004, no pet); *Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Direct proof of fraud is often unavailable; therefore, circumstantial evidence may be used to prove fraudulent intent. *Mladenka*, 130 S.W.3d at 405. Fraudulent intent may be established by the "badges" of fraud, which include whether:

(1)     the transfer . . . was to an insider;

(2)     the debtor retained possession or control of the property transferred after the transfer;

(3)     the transfer . . . was concealed;

(4)     before the transfer was made . . . the debtor had been sued or threatened with suit;

(5)     the transfer was of substantially all the debtor's assets;

(6)     the debtor absconded;

(7)     the debtor removed or concealed assets;

(8)     the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ;

13

(9)    the debtor was insolvent or became insolvent shortly after the transfer was made . . . ;

(10)   the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)   the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE ANN. § 24.005(b).

To support their fraudulent-transfer claim, the Dos cite Felt's deposition testimony that he received $202,000 of income from Waterhill in 2007. They assert that the two draw request payments that they made were used by appellants "to either pay other obligations" or "were diverted to Felt," which "clearly hindered or delayed the Dos' efforts to have their draw payments used to pay sub contractors for services performed on their residence." Again, however, the Dos produced scant evidence regarding appellants' fraudulent intent; of the statutory "badges" indicating fraudulent intent, the Dos cite only to the facts that Felt and Wasserberg, as general partners of Waterhill, are "insiders" and Waterhill became insolvent *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1), 24.005(b)(3), 24.005(b)(9). And, again, Felt and Wasserberg both denied converting any of the Dos' funds or making any misrepresentations. Viewing the summary-judgment evidence in the light most favorable to appellants, we cannot conclude that the Dos have established all the elements of fraudulent transfer as a matter of law. *See,*

14

*e.g., Coleman Cattle Co., Inc. v. Carpentier*, 10 S.W.3d 430, 434 (Tex. App.—Beaumont 2000, no pet.) (stating that if fraudulent intent "is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction") (quoting *Quinn v. Dupree*, 157 Tex. 441, 303 S.W.2d 769, 774 (1957)).

In regard to conversion, the elements of a such a claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.).

To support their claim for conversion, the Dos again argue that appellants "converted the specific funds tendered to [it] by the Dos for the specific purpose of paying subcontractors working on the Dos' home." However, the Dos have not established, as a matter of law, that appellants converted the specific funds that the Dos provided to appellants, and the Dos point to no summary-judgment evidence establishing that they demanded a return of their property or that appellants refused to return the property. Viewing this evidence in the light most favorable to

appellants, we conclude that the Dos have not established the elements of conversion as a matter of law. Accordingly, we hold that the trial court erred in granting summary judgment to the Dos on their fraudulent-transfer and conversion claims.

We sustain appellants' fourth issue.

*Texas Trust Fund Act*

In their first issue, appellants complain that the trial court erred in entering summary judgment in favor of the Dos under the Texas Trust Fund Act, which provides that,

> A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the funds.

TEX. PROP. CODE ANN. § 162.031(a). In 2005, when the Dos and Waterhill entered into their construction contract, a "beneficiary" was defined as an "artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors . . . for the construction or repair of an improvement on specific real property." *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1018, § 2, 1997 Tex. Gen Laws 3721 (amended 2009) (current version at TEX. PROP. CODE ANN. § 162.003 (Vernon Supp. 2012)).

16

Thus, at the time that the parties contracted, the Dos did not qualify as a "beneficiary" under the statute.[7] *See Murphey v. State*, 86 S.W.3d 283, 285 (Tex. App.—Amarillo 2002, no pet.) (stating that, in 2002, "the relationship of trustee and beneficiary . . . do not apply to an owner/contractor relationship"). And, in their briefing, the Dos concede that "the Texas Trust Fund Act does not apply to this case." Accordingly, we hold that the trial court erred in granting summary judgment to the Dos under the Texas Trust Fund Act.

We sustain appellants' first issue.

*Breach of Contract*

In their sixth issue, appellants argue that the Dos "failed to prove all elements of their breach of contract claim" because they failed to produce "competent evidence of damages."[8] Appellants assert that the Dos did not prove that the awarded costs were "reasonable and necessary" or that "the house

---

[7]     In 2009, the Act was amended to include a property owner as a "beneficiary of trust funds . . . in connection with a residential construction contract." Act of May 19, 2009, 81st Leg., R.S., ch. 1277, 2009 Tex. Gen. Laws 4030.

[8]     The Dos first argue that appellants have waived their challenge to the evidence of damages because they "did not challenge the damages evidence presented under the Dos' tort theories" and the trial court "did not specify the particular grounds for granting summary judgment." The Dos also argue that the entirety of the damages awarded by the trial court is supportable under either of their tort theories of liability. However, having concluded that the Dos were not entitled to summary judgment on their tort theories, the Dos cannot rely on any damages that were presumably awarded on those theories in the trial court's order granting them summary judgment.

17

completed by [Stahl] was built to the same plans and specifications agreed to by Waterhill."

The Dos argue that their damages are supported by the summary-judgment evidence of "the agreed contract price" and "the price paid for the completion of the contract after [appellants] abandoned the premises." However, the initial contract price of $1,819,320.00, the Stahl contract price of $1,765,506.00, and the money paid to appellants in the amount of $569,589.96 account for only $524,326.49 of the total damages of $684,239.00 awarded to the Dos. Furthermore, the Dos have not established that their contract with Stahl provided for the construction of the same or a similar residence that they contracted with appellants to build. As such, we cannot conclude, as a matter of law, that the damages awarded to the Dos put them "in the same economic position in which [they] would have been had the contract not been breached." *See CDB Software, Inc. v. Kroll*, 992 S.W.2d 31, 37 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Finally, although the Dos assert that appellants first breached the contract after they had "abandoned the premises," both Wasserberg and Felt testified, in their affidavits, that the Dos first breached the contract by delaying the construction with unreasonable demands and financing issues. Viewing the summary-judgment evidence in the light most favorable to appellants, we cannot conclude that the Dos established all the elements of their breach-of-contract claim

18

as a matter of law. Accordingly, we hold that the trial court erred in entering summary judgment in favor of the Dos on their breach-of-contract claim.

We sustain appellants' sixth issue.

## Conclusion

Having concluded that genuine issues of material fact exist on all of the claims brought forth by the Dos, we need not address appellants' second, sixth, and seventh issues, in which they contend that Wasserberg and Felt cannot be held individually liable for damages or attorney's fees and the trial court erred in striking their affirmative defenses.

We reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.