ERVAY, INC., Appellant,

v.

L. R. WOOD et al., Appellees.

No. 16254.

Court of Civil Appeals of Texas.

Dallas.

Nov. 22, 1963.

Rehearing Denied Dec. 20, 1963.

J. Manuel Hoppenstein and Jerome L. Prager, Dallas, for appellant.

Pat S. Russell, Mike McKool and Allen Melton, Dallas, for appellees.

WILLIAMS, Justice.

Action for declaratory judgment under Article 2524-1, Vernon's Ann.Civ.St., to construe, interpret and clearly define the rights of the parties to a certain lease agreement entered into by Ervay, Inc., as Lessor, and L. R. Wood, as Lessee. The trial court, without a jury, construed the lease contract contrary to the contention of Ervay, Inc., and this appeal follows. We affirm the trial court's judgment.

FACTS

Appellant, Ervay, Inc., was the owner of a block of land located in the City of Dallas, Texas, and being bounded by Good-Latimer Expressway, Bourbon, Paris and Eakin Streets. The entire tract of land in question, together with certain designated areas therein, and improvements placed thereon, is illustrated by the following plat which was introduced in evidence.

On July 11, 1956 appellant, as landlord, entered into a written lease contract prepared by its attorneys, whereby L. R. Wood, one of appellees, as Lessee, agreed to lease the entire premises, as shown above, for a period of twelve years, or from August 15, 1956 to August 14, 1968, at a rental of $500.00 per month, plus taxes. Appellee Wood entered upon the premises and constructed certain improvements thereon, as will be more fully discussed later. Wood subsequently became involved in a receivership and appellee Don C. Jacobsen is receiver for Wood. Appellee Norman N. Campbell is a secured creditor of Wood and appellee Raney claims some interest in the leased premises through an arrangement with Wood.

The original lease agreement, in Paragraph 6 of the "Additional Terms and Conditions" contains the provision:

"It is understood and agreed by and between Lessor and Lessee that the City of Dallas, County of Dallas or some state or federal or other public authority may at some future time take part of the property for highway or public improvement purposes, a plat of the proposed taking being herewith attached and made a part of this lease · contract."

On the front page of the lease agreement the proposed area, as referred to above, was platted and referred to as "Proposed R/W for East-West Shown in Red." The area thus platted in the original lease agreement corresponds to that area shown as Tract "A" on the plat shown above, and consisting of 36,870 square feet.

The entire Paragraph 6 of the "Additional Terms and Conditions", being the center of the controversy herein, is as follows:

"It is understood and agreed by and between Lessor and Lessee that the City of Dallas, County of Dallas or some state or federal or other public authority may at some future time take part of the property for high-

way or public improvement purposes, a plat of the proposed taking being herewith attached and made a part of this lease contract. Lessee acknowledges that he has made investigation with the City of Dallas Right-of-Way Division as to the property subject to being taken and covenants and agrees that he shall place the improvements to be erected on the property in such a location that there will be no conflict with the City of Dallas, or other public authority when a part of the property is acquired or taken for public use. In the event the City of Dallas or other Public Authority takes any part of the premises by condemnation or through negotiation with Lessor, the rent for the remainder of the property not so taken shall be reduced automatically and simultaneously $100.00 per month and this lease shall continue to remain in full force and effect. It is expressly understood and agreed that any and all damage and payment awarded or collected for such taking of the property for any public purpose shall belong to and be the property of the Lessor, whether such damage be awarded as compensation for diminution in value to the leasehold or to the fee of the premises herein leased and Lessee shall assert no right or claim to any damage as the result of any such taking."

Paragraph 2 of the "Additional Terms and Conditions" granted the Lessee the right to make improvements on the property and provided that they may be removed by the tenant at the expiration of the lease contract.

It is undisputed that Lessee Wood did construct valuable improvements on the leased premises, same being located, as above shown, almost entirely within the area known as Tract "B" and Tract "D".

It is further undisputed that the City of Dallas, and other public authority, abandoned its project to condemn that part of

the property known as Tract "A". However, six years later, in 1962, the State of Texas, acting by and through the Texas Highway Department, announced its intention to acquire a portion of the property covered by the lease agreement and notified appellant that the property would be condemned unless appellant would agree to accept the offer submitted by the Highway Department. In this proposed taking the State of Texas announced that it would condemn that part of the leased premises known as Tract "A", Tract "B" and also Tract "C", the latter tract by way of easement.

Appellant, in its petition for declaratory judgment, stated that it desired to accept the offer of the Texas Highway Department in order to avoid formal condemnation proceedings, but that appellees were asserting certain rights in the proceeds of the condemnation settlement, such rights being denied by appellant. Appellant sought to have the court declare that appellant was entitled to receive all of the benefits from the condemnation proceedings and that appellees were not entitled to receive any part thereof. Appellees answered, contending that under the provisions of the lease agreement the Lessee had waived his rights to participate in condemnation proceedings only insofar as the same related to the property designated in the original lease, namely, Tract "A"; that appellee Wood did not waive his rights to any of the proceeds of condemnation as it relates to any other part of the leased premises than Tract "A". Appellees asked the court to construe the lease to mean that there was no waiver on the part of Wood to the receipt of the proceeds of condemnation as it applied to Tract "B", Tract "C", or Tract "D".

The trial court decreed that the lease contract was valid and that appellee Wood would remain liable until the end of the lease contract for the rents therein provided; that the general laws of condemnation shall apply to all excess taking over and above that area platted (as shown by Tract "A") in the lease agreement, including damages to improvements, and the diminution of the leasehold estate; that the Lessee is not entitled to any damages pertaining to the taking of that portion of the leased property that was described in the lease contract as being the proposed area to be taken by the condemnor and platted as such.

## OPINION

Although appellant brings forward four points of error it is conceded in its brief that: "The first and only question presented by this appeal is whether or not such provision applied generally, (referring to Paragraph 6 of the lease quoted above) in the event of condemnation by any public authority of any amount of the demised premises, or only to the shaded portion platted on the map attached to the lease agreement, which represents the area which the City of Dallas contemplated taking in 1956 prior to the execution of the lease." Appellant argues that the only reasonable interpretation of the lease agreement, which evidences the intention of the contracting parties, is that the Lessee agreed to waive and relinquish any claim to "any and all damage and payment awarded or collected for such taking of the property for any public purpose * * *". By countervailing points, appellees contend that the only reasonable interpretation to be placed upon the language utilized by the contracting parties is as found by the trial court, that is, that Lessee Wood agreed to waive and relinquish his right to proceeds of condemnation only to that tract known as "A" on the plat, and did not waive or relinquish any claims to the proceeds of condemnation to any other portion of the demised premises. So, with the issue sharply drawn, the question presented to the trial court and to this court is: What was the intention of the parties as evidenced by the language used by them?

■ It should be observed that appellant does not contend that the lease agreement is ambiguous, nor is there any contention that there was fraud or mutual mis-

take in connection with the signing of the agreement. Likewise, appellees do not contend that the contract was ambiguous. The law is well settled that a written instrument, not alleged to be ambiguous, must be construed so as to carry out the intent of the parties. Brown v. Brown, Tex.Civ.App., 245 S.W.2d 995, writ. ref.

In 1860 Chief Justice Wheeler, speaking for our Supreme Court, laid down the rule of construction which is presently applicable:

> "Leases are construed, like other written agreements, so as to give effect to the intention of the parties. To arrive at the intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A construction should be avoided if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal; and that construction which is most obviously just is to be favored, as most in accordance with the presumed intention of the parties." Howeth v. Anderson, 25 Tex. 557.

This rule is repeated in 13 Tex.Jur.2d, Sec. 122, Pages 287–288, wherein it is said that the cardinal rule to be observed in the construction of contracts is to ascertain and give effect to the real intention of the parties, as that intention is revealed by the language used in the agreement. Furthermore, the court, when making its construction, will view the agreement as of the time it was made and not in the light of subsequent events. Fleming Oil Co. v. Anco Gas Corp., Tex.Civ.App., 217 S.W.2d 29; Burtis v. Butler Bros., Tex.Civ.App., 228 S.W.2d 938

In Davis v. Andrews, Tex.Civ.App., 361 S.W.2d 419, err. ref., n. r. e., we had occasion to pass upon the construction of a written instrument and we there reviewed the established rules which included the

rule sometimes called the "four corners rule" which means that the intention of the parties is to be gathered from the instrument as a whole and not from isolated parts thereof. For additional authorities on these rules of construction see Spence & Howe Construction Co. v. Gulf Oil Corp., Tex., 365 S.W.2d 631; Ingram v. Fred, Tex.Civ.App., 210 S.W. 298; Orr v. Vandygriff, Tex.Civ.App., 251 S.W.2d 573.

Another rule of construction applicable here, is that in case of a reasonable doubt as to which of two constructions best accords with the intent of the parties, that construction should prevail which is least favorable to the party who prepared the instrument. 13 Tex.Jur.2d, Sec. 121, Page 286; Amory Mfg. Co. v. Gulf C. & S. F. Ry. Co., 89 Tex. 419, 37 S.W. 856; Magnolia Petroleum Co. v. Aiken, Tex.Civ App., 289 S.W. 152; Pledger v. Business Men's Accident Ass'n of Texas, Tex.Com. App., 228 S.W. 110. In this case it is undisputed that the lease agreement was prepared by appellant's attorney.

Still another rule which has application in this case is that in construing contracts such as this the acts and conduct of the parties themselves, including acts done in the course of performance, which indicate the construction that the parties themselves put on the contract, may properly be considered by the court in interpreting the agreement. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391; Redding Foods, Inc. v. Berry, Tex. Civ.App., 361 S.W.2d 467; 13 Tex.Jur.2d, Sec. 128, Page 300; McDonald v. Denson, Tex.Civ.App., 199 S.W.2d 707.

With these well recognized landmarks before us we turn now to a determination of the question: What was the intention of the contracting parties at the time they entered into the lease agreement? In our opinion when we apply the "four corners rule" by now examining all of the language utilized by the contracting parties we have no difficulty in determining that

the parties meant what the able trial judge found that they meant, namely, that the appellee Wood gave up and yielded no right to damages by condemnation other than those damages which would be occasioned by the taking of the property which was contemplated to be taken at the time of the execution of the lease. The picture, to us, seems reasonably clear. We need go no further than the language of the lease itself and the acts and conduct on the part of both parties subsequent to the execution of the lease. It is clear that appellee Wood was interested in taking a lease on the entire block of property and to improve the same at his own expense and to accept a lease thereon for a period of twelve years at an agreed rental. It is clear that the parties had some information regarding a possible condemnation of some portion of the city block in connection with the East-West Expressway, and they both made an effort to determine the area of the premises that appellee would be denied the use and enjoyment of some time during the period of the lease agreement. As a consequence of this, the proposed area to be condemned by the City of Dallas, or some other authority, was expressly platted on the face of the lease contract (being the same as Tract "A" shown above) and shaded said area in red. Appellee Wood agreed that he would place his improvements on the leased premises without the area of the proposed condemnation area shaded in red. He said, in effect: "I will erect my improvements on this lease in such a location so that there will be no conflict with the City of Dallas, or other public authority, when a part of the property is required or taken for public use." He further says that in the event the City of Dallas, or other public authority, takes any part of the premises by condemnation or negotiation with Lessor, the rent on the remainder of the property not so taken shall be reduced automatically and simultaneously $100.00 per month and that the lease shall continue to remain in full force and effect. He expressly agrees that "any and all damage and payment awarded or collected for such taking of the property for any public purpose shall belong to and be the property of the Lessor * * *." Viewing the lease in the light of the facts and circumstances existing at the time it was executed, there seems to be no doubt but that Lessee took the lease, erected his improvements, and waived his right of damages for condemnation believing that Tract "A" only would be taken. This is the only tract that the parties had in mind at the time the lease was made. The parties specifically pinpointed that part of the demised premises which they had in mind as would likely be condemned by public authority and this specific pinpointing would prevail over any general language that might be later utilized. In our opinion, it was the clear and manifest intention of both Lessor and Lessee that only that part of the premises designated as Tract "A" would be taken by condemnation and only that part entered into the minds of the parties insofar as waiver of damages for condemnation is concerned.

Why did the parties designate the proposed area to be condemned? We think it obvious they did so because they had in mind that since this area was likely to be taken by condemnation that the Lessee should locate his improvements outside of this area and it was also an aid to the Lessee to determine that portion of the leased premises which he might be required to turn back to the landlord for condemnation purposes.

The lease did not provide for a termination thereof in the event of condemnation, but did provide for a reduction of the amount of money payable to the Lessor. The 20 percent depreciation of the lease payment would, especially in the light of absence of improvements thereon, represent a proper ratio of reduction when the entire area is considered. It is interesting to note that no provision was made in the agreement for the Lessee to disclaim any interest in the award in condemnation for the value of his improvements. This is so because it was expected, under the express

terms of the lease, that the improvements would be placed without the platted area of the lease contract and therefore the matter of value of improvements would not be an issue if the condemned area was confined to that platted on the face of the lease contract. When the parties came to the waiving of damages for condemnation they expressly said that the Lessee would make such waiver and disclaim such payment of damages for condemnation for "*such taking*" of the property. (Emphasis supplied.) What could the parties have meant by "such taking" other than that which they had only a few lines above platted as the specific taking? If this interpretation is not correct then the platting of the area and the placing of the same on the lease contract would serve no purpose whatsoever.

Furthermore, the interpretation placed upon this lease by the trial court tends to that equality and justness referred to by Chief Justice Wheeler in Howeth v. Anderson, supra. The original area of all the leased premises was 85,201 square feet. The area, Tract "A", contemplated to be taken, and upon which Lessee placed no improvements, reduced this by 36,870 square feet. However, the eventual taking of Tracts "A" and "B", including the majority of Lessee's improvements on Tract "B" as well as the easement on Tract "C", has the effect of leaving only Tract "D" consisting of 12,520 square feet, and only a part of the improvements, for Lessee's use. At the same time the validity of the lease for the remainder of the term at the reduced rental of $400.00 per month is undisturbed. Such a result, as contended by appellant, could not be said to be equitable or just within the reasonable contemplation of the parties.

Cases cited and relied upon by appellant, such as County of McLennan v. Shinault, Tex.Civ.App., 302 S.W.2d 728; Tex.Civ. App., 330 S.W.2d 486; and a number of cases from without Texas, are not in point here for the simple reason that in each of those cases there is a clear manifestation of intent on the part of the Lessee that he would waive all rights to all taking by condemnation in the future. The validity of such an agreement is not here questioned but we merely say that the facts here presented are not the same as in the cases relied upon by appellant.

Finding no error reflected in this record, we overrule appellant's points and affirm the judgment.

Affirmed.