**Mrs. LeVelle H. ALKIRE, indiv. etc., Appellant,**

v.

**DUGAN DRUG STORES, INC., et al., Appellees.**

**No. 15765.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 3, 1971.

Rehearing Denied June 24, 1971.

Theo. R. Kirchheimer, Ed S. Atkinson, Houston, for appellant.

Charles L. Price, Houston, for appellees.

COLEMAN, Justice.

This is a suit to recover the balance due under a contract for the sale of 32,000 shares of the common stock of Dugan Drug Stores, Inc., and under a note given for the purchase price as required by said contract. Appellant appeals from an adverse judgment entered after a jury trial. The principal issue is the interpretation to be given a provision of the contract requiring a reduction in the price of the stock under certain conditions. The judgment is reversed.

T. B. Alkire, deceased, entered into a contract with appellees, embodied in three written instruments dated May 15, 1963, to sell to Dugan Drug Stores, Inc., the shares of stock in that corporation owned by him for $3.00 per share. In accordance with the agreement between the corporation, Dugan, and Alkire, the corporation executed a promissory note for $96,000.00, payable $1,000.00 each month beginning on the first day of February, 1964, bearing interest after maturity at the rate of 10% per annum and providing for 10% attorney's fee. The parties entered into an escrow agreement whereby this note, certain other notes representing indebtedness due Alkire from the corporation, and the shares of stock, were placed in escrow with a bank to be delivered under specified conditions.

One instrument provided for the sale of the stock in consideration of a note for $96,000.00 payable $1,000.00 per month, and that the stock should be placed in escrow until the note was fully paid. Other provisions, which need not be discussed, were included in the agreement.

The provisions of this instrument were modified, and changed in some respects, by a "supplemental agreement" bearing the same date. The provision giving rise to this controversy reads:

"1. In the event that all of the outstanding shares of corporate stock of Dugan Drug Stores, Inc. should be sold by J. S. Dugan for an amount less than $3.00 per share, Party of the First Part (T. B. Alkire) agrees to proportionately reduce the sales price of the shares of stock sold under the abovementioned contract to correspond with the sales price per share received by J. S. Dugan from a bona fide sale of his controlling interest in said corporation; provided that said consideration be paid in cash."

While these instruments were dated May 15, 1963, the acknowledgments were dated December 27, 1963. On January 2, 1964, the corporation passed the following resolution:

"Resolved: that this meeting is to confirm and ratify contract dated May 15, 1963, between T. B. Alkire, as Seller and Dugan Drug Stores, Inc. as Buyer, and personally endorsed and guaranteed by J. S. Dugan, individually, of said contract, notes and other agreements; whereby they have contracted to buy

32,000 shares of stock (common stock) at a price of $3.00 per share, issuing note in the amount of Ninety Six Thousand ($96,000.00) Dollars, payable in monthly installments of $1,000.00 each, without interest; first payment to be made February 1, 1964 and a like payment each month thereafter until said note is paid in full.

"This ratification and confirmation has been delayed, due to the fact that certain negotiations for the sale or merger of the Corporation has been going on for the past several months, and at this time these negotiations have been concluded without any results."

At the time these documents were executed, J. S. Dugan was president of the corporation, T. B. Alkire was secretary-treasurer, and C. R. Caldwell, Jr., was vice president. They constituted the board of directors of the corporation. Dugan owned 275,000 shares of the corporation common stock. There were 31,600 shares owned by others than Dugan and Alkire.

In May or June 1967, J. S. Dugan sold his stock in the corporation to Mading Drug Stores. He testified that he received $387,000.00, plus "a little interest". He explained that "it was paid, $203,000.00 plus the accrued interest, to McKesson & Robbins and $184,000.00, plus interest, to Mading's Drug Stores, which was my personal obligation." From other testimony it appears that the $184,000.00 was a debt due to Dugan Drug Stores, Inc., which was satisfied in some manner by Mading Drug Stores. The $203,000.00 account due to McKesson & Robbins was an obligation of Dugan Drug Stores, Inc., which was secured by certain property owned by J. S. Dugan. McKesson & Robbins was threatening to foreclose on the property at the time. Mading Drug Stores later acquired the outstanding shares.

The comptroller of Mading-Dugan Drug Stores, Inc., testified that the books of the company reflected a payment of $206,814.99 to McKesson & Robbins in June 1967, and a payment in the amount of $184,000.00 credited against the drawing account of Mr. Dugan. He testified that this was an intercompany entry having the effect of a cash transaction. The obligation was transferred from Dugan to Mading-Dugan Drug Stores, Inc. There was other testimony that Mr. Dugan was paid $390,000.00 for his stock in cash. This witness was not permitted to testify as to the exact procedure followed in making the payment.

Prior to June 1967, Mr. Alkire received the $1,000.00 payments monthly as they became due. At the time Mading's Drug Stores purchased Mr. Dugan's stock the balance sheet of Dugan Drug Stores, Inc., showed an outstanding balance due to T. B. Alkire of $56,000.00. The $1,000.00 payment on the note made in June 1967 recited on its face a balance due to T. B. Alkire of $55,000.00, and the July payment recited a balance due of $54,000.00. There was testimony that the books of the company reflected a balance due to Mr. Alkire of $3,760.00 as of June 30, 1967. On October 2, 1967, the corporation tendered a check for $1,760.00 as final payment of the Alkire note. The tender was refused.

The jury found that the phrase, "In the event that all of the outstanding shares of corporate stock of Dugan Drug Stores, Inc., should be sold by J. S. Dugan," as used in the supplementary agreement was intended by the parties to mean a sale of "all the outstanding shares of stock owned by J. S. Dugan in said corporation."

It also found that the phrase, "provided that said consideration be paid in cash," as used in the supplementary agreement was intended by the parties to mean that the consideration for the shares of stock owned by J. S. Dugan be paid in cash, and that J. S. Dugan was paid in cash.

The original sales agreement, the supplementary agreement, the note and the escrow agreement are all parts of the contract of the parties and must be construed together to arrive at the intention of the parties and the meaning to be given the

language used in the contract. Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989 (1947). The cardinal rule of construction of unambiguous contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. Citizens National Bank in Abilene v. Texas & Pacific R. Co., 136 Tex. 333, 150 S. W.2d 1003 (1941); Reconstruction Finance Corporation v. Gossett, 130 Tex. 535, 111 S.W.2d 1066 (1938). When making its construction, the court will view the agreement as of the time it was made and not in the light of subsequent events. Ervay, Inc. v. Wood, 373 S.W.2d 380 (Tex.Civ.App.— Dallas, 1963, writ refused, n. r. e.).

Where a doubt as to the meaning of a written instrument arises from the language the parties used, and not from extrinsic matters, the question as to what the parties meant is for the court and not the jury. " * * * Of course it is elementary, if there is no ambiguity, the construction of the written instrument is for the court, and moreover, even in those cases of ambiguous instruments, if the parol evidence is undisputed as to the circumstances, the construction is yet a question of law for the court." Turner et al. v. Montgomery et al., 293 S.W. 815 (Tex.Com.App. 1927); Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306 (Tex.1944).

The contract instruments, with the exception to be noted, clearly provide that Dugan Drug Stores, Inc. agrees to purchase 32,000 shares of its own stock from T. B. Alkire, and to pay him the sum of $96,000.00 in monthly installments of $1,000.00 each. The difference between the parties arises over the construction to be given to paragraph one of the supplementary agreement hereinbefore quoted.

The language used in this paragraph is unambiguous, with the exception of the construction to be given the phrase, "provided that said consideration be paid in cash." The evidence as to the circumstances surrounding the transaction is not in dispute. The meaning of the language used in this paragraph, and the intention of the parties as reflected thereby, is a matter of law for determination by the court.

The agreement of Mr. Alkire to reduce the price he was to be paid for his stock was conditioned on the "event that all of the outstanding shares of corporate stock of Dugan Drug Stores, Inc., should be sold by J. S. Dugan for an amount less than $3.00 per share." J. S. Dugan sold all of the shares of this stock which he owned. He owned a "controlling interest" in the corporation, but he did not own "all the outstanding shares of corporate stock of Dugan Drug Stores, Inc." The agreement was that if all the "outstanding shares" were sold by Mr. Dugan, Mr. Alkire would proportionately reduce the sales price of his shares "to correspond with the sales price per share received by J. S. Dugan from a bona fide sale of his controlling interest in said corporation." It is significant that in the same short paragraph reference was made to "all of the outstanding shares," to the "shares sold under the above mentioned contract," and to the "sales price per share" received from the sale of Dugan's "controlling interest in said corporation." It would appear that the language used was carefully chosen. Had the parties intended to provide that Alkire would reduce the consideration to be paid for his stock to correspond to that received by Dugan in the event he sold his controlling interest in the corporation, it could have been clearly stated in simple language.

The event on which the price of the Alkire stock was to be proportionately reduced did not occur. The trial court erred in failing to render judgment non obstante veredicto. The judgment of the trial court is reversed and judgment is here rendered that appellant recover judgment for $52,000.00, interest on that amount at the rate of 10% per annum from October 2, 1967, and $5,200.00, the attorney's fee provided in the note.

Reversed and rendered.