IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50094
Summary Calender
_____


GRADY LEE PUBLISHING

                                   Plaintiff-Appellant

v.

PRIMEDIA, INC; ET AL

                                   Defendants

PRIMEDIA, INC; HPC PUBLICATIONS, doing business as
Distributech

                                   Defendants-Appellees

_____

Appeal from the United States District Court
for the Western District of Texas
Docket No. EP-99-CV-191-DB
_____

August 22, 2000

Before KING, Chief Judge, and POLITZ and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Grady Lee Publishing ("Grady") appeals

the district court's entry of summary judgment in favor of

Defendants-Appellees Primedia, Inc., and HPC Publications, doing

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

business as Distributech.  For the following reasons, we affirm.

I.

Grady is a publisher of free advertising leaflets that are distributed in the El Paso, Texas area.  Distributech[1] owns and manages "community racks" of free publications at various retail outlets throughout the same area.  Distributech leases spots in its racks to advertisers who wish to distribute their materials. In 1991, Grady and Distributech entered into five one-year "Pocket Rental/Delivery Service" agreements (the "Agreements" or "1991 Agreements").  The 1991 Agreements provided that Distributech would provide space in its racks for Grady's materials at Circle-K and Seven-Eleven convenience stores, and at Smith's supermarkets (collectively, "the retailers").

The Agreements also contained a "Special Conditions" section which stated that Grady had the "[o]ption to renew at the same rate for the term of DistribuTech [sic] agreements with the stores on 12 month contracts."  The Agreements also specified

---

[1]  Distributech is a division of Haas Publishing Companies, Inc. ("Haas"), which in turn is a wholly owned subsidiary of Primedia, Inc.  Grady originally named all three companies as defendants in this suit.  Primedia objected to its inclusion, claiming that Haas and Distributech were the true parties in interest, that Primedia had not abused the corporate privilege, and therefore it was not a proper party.  The district court agreed, and granted Primedia's motion for summary judgment.  On appeal, Grady does not dispute the district court's entry of judgment in favor of Primedia, but only challenges the result as to Distributech.

that they were

> contingent upon DistribuTech USA's valid contract with the owner/manager of the location involved.  Should such contract expire or be cancelled, then this Agreement shall terminate simultaneously and the parties hereto will be obligated to each other only for services/payment up to and including the date of termination.

> At the expiration of this contract, pursuant to the terms as above set out, this [Agreement] shall continue on a month-to-month basis until such time as [Grady] signs a new [Agreement] or either party gives 30-day prior advance written notice of intent not to continue under the terms hereof.

Beginning in 1992, Grady sent Distributech an annual letter purporting to exercise the renewal clause of the 1991 Agreements.[2]  In March 1999, however, Distributech informed Grady that it intended to terminate the 1991 Agreements, and that Grady's materials would be removed from Distributech's racks unless new agreements were executed.  Grady believed that the 1991 Agreements had been properly renewed and remained in effect, and that Distributech's removal of Grady's materials would constitute a breach of the Agreements.  Grady refused to negotiate new agreements, and Distributech subsequently removed

---

[2]  In 1994, Distributech's relationship with Circle-K convenience stores ended.  As a result, Distributech racks were removed from those stores.  Pursuant to the terms of the 1991 Agreements, Distributech informed Grady that the Agreements covering the Circle-K stores were terminated.  Grady does not argue that the 1991 Agreements covering the Circle-K stores were improperly terminated.

Grady's materials.  In May 1999, Grady filed suit in Texas state court asserting a breach of contract by Distributech and seeking actual and exemplary damages and costs.  Distributech subsequently removed the action to the United States District Court for the Western District of Texas, invoking the court's diversity jurisdiction.

In the district court, Distributech moved for summary judgment, arguing that Grady's right of renewal existed only so long as the underlying contracts between Distributech and the retailers in effect at the time the 1991 Agreements were executed remained in force.  As Distributech had entered into new contracts with the retailers since the execution of the 1991 Agreements, Grady no longer had a right of renewal.  Therefore, Distributech argued that the parties had been continuing under the Agreements on a month-to-month basis, and that Distributech had not breached the Agreements.[3]

Grady moved for partial summary judgment, arguing that the option clause of the Agreements allowed him to renew the Agreements for the "term" of Distributech's agreements with the retailers.  Grady contended that it therefore had a right to renew the Agreements so long as Distributech had some sort of ongoing relationship with the retailers allowing the placement of

_____

[3]  It is undisputed that the underlying contracts between Distributech and the retailers in effect in 1991 began to expire in 1992 and have subsequently been replaced by new agreements.

4

community racks within the stores. As Distributech still had agreements (albeit different agreements than those in effect in 1991) with Seven-Eleven and Smith's supermarkets, argued Grady, the renewal option was still valid and Distributech was obliged to allow Grady to annually renew the 1991 Agreements at the same rental rate.

The district court found that the 1991 Agreements were unambiguous, and that Grady only had a right of renewal during the term of the underlying contracts between Distributech and the retailers that were in force in 1991. The court determined that the language of the 1991 Agreements contemplated that as soon as the underlying contracts between Distributech and the retailers expired or were cancelled, the 1991 Agreements likewise ended. Because the underlying contracts between Distributech and the retailers in force in 1991 had expired and been replaced, the district court found that the Agreements had formally terminated and Distributech and Grady's performance under the terms of the Agreements had continued on a month-to-month, rather than a year-to-year, basis. Finding that Distributech provided the requisite notice to terminate the month-to-month performance of the Agreements, and thus that there had been no breach, the district court granted Distributech's motion for summary judgment. Grady timely appeals.

II.

5

We review a grant of summary judgment de novo, applying the same standards as the district court.  See Matagorda County v. Law, 19 F.3d 215, 217 (5th Cir. 1994).  Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The interpretation of an unambiguous contract is a question of law that we review de novo.  See Clardy Mfg. Co. v. Marine Midland Business Loans Inc., 88 F.3d 347, 351 (5th Cir. 1996) (citations omitted).  In this case, neither party argues that the district court erred in finding that the 1991 Agreements are unambiguous.  Rather, Grady claims that the district court erroneously interpreted the Agreements' unambiguous terms.

On appeal, Grady maintains that the parties' course of performance indicates that the district court's interpretation of the Agreements is flawed.  Grady asserts that even though the 1991 Agreements are unambiguous, the parties' course of performance may nonetheless be used to interpret the Agreements.[4] Grady argues that it sent Distributech an annual letter

---

[4]  Distributech argues that we should not consider Grady's argument on this issue because he failed to advance it before the district court.  We note, however, that Grady did include extrinsic evidence regarding the parties' course of performance in his motions to the district court, even though this evidence was offered to the district court in the event it found the 1991 Agreements ambiguous.  Given that Distributech ultimately prevails on the merits, and reading the record in a light most favorable to Grady, we find that Grady sufficiently preserved the issue.

purporting to renew the 1991 Agreements, that Distributech never objected to Grady's purported renewal, and that Distributech continually acted as though the 1991 Agreements had been annually renewed.[5] As a result, Grady contends that Distributech's course of performance indicates that so long as Distributech maintained community racks at the retailers, and Grady annually exercised its right to renew, the 1991 Agreements remained in effect.

Under Texas contract law, it is quite settled that when a contract is unambiguous, "extrinsic evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." Clardy Mfg. Co., 88 F.3d at 352 (internal quotations omitted) (citing Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951)); accord Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 733 (Tex. 1981) (holding that when a contract is unambiguous the court shall confine its review to the agreement "as written"); East Montgomery County Mun. Util. Dist. No. 1 v. Roman Forest Consol. Mun. Util. Dist., 620 S.W.2d 110, 112 (Tex. 1981) ("The conduct of the parties is ordinarily immaterial in

_____

[5] While we ultimately decline to consider any course of performance evidence, we note that Grady's offered evidence is not entirely persuasive. While Grady contends that Distributech acted as though the 1991 Agreements remained in force and had been annually renewed, the record contains 1995 correspondence in which Distributech challenges the continuing validity of the 1991 Agreements.

7

the determining of the meaning of an unambiguous instrument.").[6] We agree with Distributech that the Texas cases cited by Grady for the proposition that a court may consider course of performance evidence in interpreting an unambiguous contract are inapposite. The cases Grady cites either involve the interpretation of an ambiguous contract, <u>see</u>, <u>e.g.</u>, <u>Trinity Universal Ins. Co. v. Ponsford Brothers</u>, 423 S.W.2d 571, 575 (Tex. 1968), fail to discuss whether the agreement at issue was ambiguous or unambiguous, <u>see</u>, <u>e.g.</u>, <u>United States v. Martin</u>, 480 F.Supp. 880, 883 (S.D. Tex. 1979), or involve circumstances entirely different than those at issue here, <u>see</u>, <u>e.g.</u>, <u>Enserch Corp. v. Rebich</u>, 925 S.W.2d 75 (Tex. App. 1996, writ dism'd by

_____

[6] We recognize that there is some disagreement among the commentators regarding the use of course of performance evidence in interpreting an unambiguous contract. Farnsworth suggests that course of performance evidence may serve as an admission and can be used in interpreting all types of contracts. <u>See</u> II E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.13 (2d ed. 1998). Williston, however, maintains that "the parties' [course of performance] conduct, no matter how probative in the abstract, will not be considered by many and perhaps most courts unless the contract is ambiguous." 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:14 (1999) (citing <u>East Montgomery County</u>, 620 S.W.2d 110). Corbin, on the other hand, maintains that "there is no good reason why the courts should not give great weight to the further expressions" of the parties through their course of conduct. 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 558 (1960); <u>but see</u> <u>id.</u> (stating that if the contract is "plain and unambiguous" the court may determine that "a different meaning will not be adopted on the basis of the practical application of the parties"). Given the clear statements by the Texas Supreme Court in <u>Sun Oil</u> and <u>East Montgomery County</u>, however, we find that the law in Texas is quite settled: If a contract is unambiguous, extrinsic evidence regarding the parties' course of performance may not be used to interpret the contract's terms.

8

agr.) (discussing whether a contract had been materially modified based on the parties' course of performance).[7]  As a result, we refuse to consider the parties' course of performance in interpreting the 1991 Agreements.

Grady also argues that, regardless of the parties' course of performance, the district court's interpretation of the Agreements nullified the option clause because the underlying contracts between Distributech and the retailers began expiring in 1992 – before Grady would have had the opportunity to exercise the option to renew in the first instance.  Grady's argument focuses on the meaning of the word "term" as it is used in the Agreements' option to renew.  According to Grady, so long as Distributech continued to place community racks in the retailers' stores, the "term" of Distributech's agreements with the retailers had not ended and, therefore, Grady had a right to renew the 1991 Agreements.  We disagree. Grady's argument is thwarted by both the plain language of the Agreements and the general rules of contract interpretation.

"In construing the unambiguous terms of a contract, we give

---

[7]  We also note Grady's reliance on <u>Ervay, Inc. v. Wood</u>, 373 S.W.2d 380 (Tex. Civ. App. 1963, writ ref'd n.r.e.).  Indeed, the language of <u>Evray</u> tends to suggest that the court may consider post formation evidence in interpreting an unambiguous contract. As Distributech points out, however, <u>Evray</u> was decided nearly twenty years before the Texas Supreme Court's decisions in <u>Sun Oil</u> and <u>East Montgomery County</u>.  Given the more recent pronouncements of the Texas Supreme Court, we do not find <u>Ervay</u> to be persuasive on this issue.

the words their ordinary meaning unless other provisions suggest a contrary meaning." Scot Properties, Ltd. v. Wal-Mart Stores, Inc., 138 F.3d 571, 573 (5th Cir. 1998) (citations omitted). Initially, we note that Grady's interpretation of "term" is contrary to the word's plain meaning. The word "term" is commonly defined as a "limited or definite extent of time." WEBSTER'S THIRD INTERNATIONAL DICTIONARY (1963). "Term" does not, as Grady suggests, refer to an unquantifiable period of time – such as the amount of time that Distributech will continue to display community racks at the retailers.

Furthermore, in interpreting a contract, the court is to "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). The Agreements specifically state that when the underlying contracts between Distributech and the retailers "expire" or are "cancelled," the Agreements also terminate. The term "expire" connotes a "termination from mere lapse of time." BLACK'S LAW DICTIONARY 579 (6th ed. 1990). "Cancelled," meanwhile, suggests a deliberate abandonment or cessation of the relationship between Distributech and the retailers. See, e.g., id. at 206. Grady's interpretation of the Agreements recognizes that the Agreements would terminate if the contracts between Distributech and the retailers were cancelled, but it ignores the effect of those contracts' expiration. The plain language of the

10

contract indicates that the parties contemplated that the 1991 Agreements would terminate at the expiration of the underlying contracts between Distributech and the retailers.  A contrary reading, whereupon Grady could continuously renew the 1991 Agreements until Distributech ceased placing racks at the retailers, would render the term "expire" meaningless.  Such a reading would not give effect to all of the provisions of the Agreements.  See Coker, 650 S.W.2d at 393.

Had the underlying contracts between Distributech and the retailers not expired and been replaced by new contracts, but rather been extended for a longer term or continued on a month-to-month basis, the 1991 Agreements would have remained in effect and Grady would have retained the right to exercise the Agreements' renewal option.  Therefore, the district court's, and our, interpretation of the Agreements does not nullify the option clause.  Based on the unambiguous language of the Agreements, we conclude that once the underlying contracts between Distributech and the retailers expired, the Agreements were no longer in force and Distributech and Grady continued to transact business under the Agreements on a month-to-month basis.  As a result, Distributech did not breach the 1991 Agreements when it gave Grady proper notice of its intent to stop displaying Grady's materials unless new agreements were negotiated.

III.

11

For the above stated reasons, we AFFIRM.