LANGE et al. v. JONES. (No. 8474.)

(Court of Civil Appeals of Texas. Galveston. March 20, 1924.)

1. Venue ⬅➞7—Contract for purchase held to obligate buyer to make payment in county of venue.

Where defendant's order for coffee from plaintiff specified that all claims, past, present, and future, were to be adjusted and payable at Galveston, *held*, under the evidence, that such order was not an isolated transaction, but that provision as to place of payment was applicable to entire account with plaintiff, and consequently suit in Galveston county for balance due was proper, in view of Rev. St, art. 1830, subd. 5.

2. Contracts ⬅➞212(2)—Where duration of contract not fixed, reasonable time will be presumed.

Where no precise time is fixed for the duration of an agreement, court will interpolate an intention to agree on reasonable time.

3. Sales ⬅➞82(2)—Time during which agreement as to place of payment on general account effective held reasonable.

Where individual purchaser in small country town agreed with city wholesaler to make payments on his general account in the city, but no precise time was fixed for duration of such agreement, making agreement effective in force from January 5, 1921, to February 2, 1922, *held* not unreasonable.

Appeal from Galveston County Court; E. B. Holman, Judge.

Action by Alvin T. Lange and others against C. E. Jones. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Terry, Cavin & Mills and Charles L. Barrow, all of Galveston, for appellants.

C. G. Dibrell and McDonald & Wayman, all of Galveston, for appellee.

GRAVES, J. This appeal is from an order sustaining appellee's plea of privilege to be sued in Houston county, that of his residence, instead of in Galveston county, where the suit was filed.

Appellants, who were plaintiffs below, laid the venue in Galveston county, pursuant to subdivision 5, art. 1830, Rev. St., claiming that the appellee signed a memorandum in writing on January 5, 1921, which constituted a contract to pay the claim sued upon in Galveston county within the meaning of the statute referred to. The plea of privilege was in statutory form, as was the affidavit controverting the same, and simply put in issue the question of whether or not the transactions between the parties constituted such contract.

Trial of the matter below was had upon an agreed statement of facts as follows:

"On January 5, 1921, the defendant signed the memorandum set out in words and figures below:

" 'No. 18.     Salesman—Hawkins.

" 'Pricilla, Texas, 1/5, 1921.

United States Food Administration License No. G–07307.

" '(Received Jan. 6, 1921.)

" 'Wilkens & Lange, Wholesale Grocers and Cotton Factors, Galveston, Texas—Gents: Subject to your approval, please ship the below named articles, you not being responsible for perishable goods, leakage, breakage, or shortage, after obtaining bill of lading in good order.

" 'Terms, 30 days or 2 per cent. off in 10 days.

" 'All your claims or demands on ——, past, present and future, are adjustable and payable at Galveston, Texas, with 10 per cent. per annum interest after due date and 10 per cent. additional for attorney's fees if collected by law.

" '(Jan. 11, 1921.)

" 'Name of Purchaser—C. E. Jones

" 'Shipping directions—c/o Agt. Grapeland, Tex.

" 'Folio ——.

| Quantity. | Article. Use Separate Line for Each Article. | Gross Gallons. | Net Gallons. | Price. | Extension. |
|---|---|---|---|---|---|
| 1. | CS 36/3 Magnolia Coffee Gr. Magnolia Coff. Co. Ho. | | 36 | 80 | 28.80 |

" 'Decline in price

" '(Ordered Jan. 6, 1921.)     C. E. Jones.'

"Beginning on February 6, 1918, and from time to time until January 5, 1921, the plaintiffs sold and delivered certain goods, wares, and merchandise to the defendant. On January 5, 1921, the plaintiffs sold and delivered certain goods, wares, and merchandise to the defendant, as indicated by the memorandum set out above. Subsequent to January 5, 1921, and from time to time until and including February 2, 1922, the plaintiffs sold and delivered certain goods, wares, and merchandise to the defendant.

"The plaintiffs charged all of said goods, wares, and merchandise to the defendant and maintain an open account with the defendant. From time to time before and after January 5, 1921, the defendant paid the plaintiffs certain sums of money, which were credited on said open account. The payments were in that manner applied to the oldest items charged against the defendant.

"At the time the plaintiffs' petition was filed the credits were more than sufficient to pay for all goods, wares, and merchandise purchased prior to January 5, 1921, and also the goods, wares, and merchandise purchased as shown in the memorandum set out above. The plaintiffs sold the first goods, wares, and merchandise to the defendant, and opened the account, on or about February 6, 1918. The account has not been closed at any time since; that is to say, the payments made by the defendant to the plaintiffs and credited to the account have

⬅➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

never been equal to the charges against the account."

[1] We sustain the contention of appellants that under these facts the contract sued upon was one in writing obligating appellee to pay the claim in Galveston county. It seems to us clear that the order for the coffee of January 5, 1921, was not an isolated transaction standing by itself, to which alone the provision obligating appellee to pay at Galveston applied, but that it was merely one item of what must have been intended by the parties to be a running and continuing account between them, and, if that be true, then the provision in the signed agreement, that "all your claims or demands on ———, past, present and future, are adjustable and payable at Galveston, Texas, with 10 per cent. per annum interest after due date and 10 per cent. additional for attorney's fees if collected by law," expressly constituted an obligation to pay "all claims and demands" at Galveston that might accrue under it. That the parties themselves so regarded their agreement is shown from what they did in carrying it out. The particular amount sued on was for goods bought (or for a balance due on them) some time between January 5, 1921, the date of the signed memorandum, and February 2, 1922, the exact time of the purchases not appearing. At no time during this interval was the account closed, but it was kept running along until February 2, 1922, and periodic payments made thereon by the appellee were credited with his acquiescence, on the oldest items; the aggregate of these on the last-mentioned date being sufficient to clear off everything up to and including the particular bill bought at the time the written agreement was signed. That bill itself, however, is not shown to have been paid for in cash at the time it was incurred, but evidently became subject to the general running arrangement, and, as just recited, was absorbed by the later payments made along until the account was finally discontinued in February of 1922.

If this item, a case of coffee, had been shown both to have been bought and paid for at the time the writing was signed by appellee, as his brief in this court mistakenly assumes, there would be more force in his appended argument that the signed memorandum was merely a formal order blank applying to that transaction only, and that therefore the claim here sued upon was not then within the contemplation of the parties; but the agreed facts indicating otherwise, and unmistakably showing, it seems to us, that this item was mutually regarded as being a part of and subject to the understanding about payment for the continuing account as a whole, we think the contention cannot be sustained. On the contrary, the facts

given make even a stronger case under the venue statute invoked than Traylor v. Blum (Tex. Sup.) 7 S. W. 829, or Borschow v. Waples-Platter (Tex. Civ. App.) 223 S. W. 872.

[2, 3] Neither do we think it can be said that the time during which the obligation to pay at Galveston was to run was either so indefinite or unreasonable as to make the agreement unenforceable. It is true that no precise time is fixed for the duration of this arrangement, but the courts will interpolate an intention to agree upon a reasonable time, and the period between January 5, 1921, and February 2, 1922, the actual time here, for the running of such a general account as this, one between a wholesaler in the city and an individual purchaser in a small country town cannot be deemed unreasonable. McGary v. Campbell (Tex. Civ. App.) 245 S. W. at page 115 (4, 5).

From these conclusions it follows that the judgment sustaining the plea should be reversed, and the cause remanded to the court below for trial.

Reversed and remanded.