**BURRUS MILLS, INC., d/b/a Burrus Feed Mills, Appellant,**

v.

**Otto W. HEIN, Appellee.**

No. 16330.

Court of Civil Appeals of Texas.

Dallas.

April 3, 1964.

Rehearing Denied May 1, 1964.

Matthews, Matthews & Allen, Tom D. Matthews, Jr., Dallas, for appellant.

Charles C. Smith, Jr., Cameron, and Walter M. Hilliard, Caldwell, for appellee.

WILLIAMS, Justice.

This is a venue action involving Subdivision 5, Art. 1995, Vernon's Ann.Civ. St. Burrus Mills, Inc., a wholesale feed processor and distributor, brought this suit in Dallas County, Texas against Otto W. Hein, also known as Pete Hein, a resident of Burleson County, Texas, upon a sworn account for the purchase price of merchandise furnished, as evidenced by statements and invoices attached to plaintiff's petition.[1] In due time appellee filed his plea of privilege to be sued in Burleson County. Appellant filed its controverting plea based upon the exception contained in Subdivi-

1. The action was also upon a written guaranty but this phase of the case was not prosecuted at the plea of privilege hearing and becomes immaterial upon this appeal.

sion 5, Art. 1995, V.A.C.S.[2] Upon hearing, the court sustained appellee's plea of privilege, such order providing, *inter alia*: "The court finds that such controverting plea is insufficient in law, and declines to hear any evidence in support thereof." Appellant's two points on appeal complain of the trial court's action in refusing to hear evidence on the controverting plea and in holding, as a matter of law, that such controverting plea was insufficient to justify the retention of venue ·in Dallas County. A careful review of the record convinces us that the trial court was correct in sustaining the plea of privilege and we therefore affirm such action.

As stated above, this suit was upon verified account, evidenced by statements and invoices. It is significant to observe that appellant made no effort to retain venue in Dallas County under Subdivision 5, Art. 1995, V.A.C.S. by contending that the invoices themselves provided for payment in Dallas County. Dowdell v. Ginsberg, Civ. App., 244 S.W.2d 265; Harrison v. Facade, Inc., Civ.App., 355 S.W.2d 543. Instead, appellant attempted to invoke the statutory exception to venue by relying upon a number of collateral guaranty agreements which appellee had executed on other dates and with reference to other matters than those involved in this suit. All of these contracts, apparently upon standard forms furnished by appellant, are identical (with the exception of the customer's name) and may be illustrated by Exhibit "J" copied in the footnote.[3] The material paragraphs in

2. Subdivision 5, Art. 1995, V.A.C.S.:
   "Contract in writing.—If a person has contracted in writing to perform an obligation if a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason. of such obligation may be brought against him, either in such county or where the defendant has his domicile."

3. (Contract)
                    "EXHIBIT 'J'
                                Date 3-8-62
   To: CREDIT DEPARTMENT
        BURRUS FEED MILLS
        POST OFFICE BOX 1688
        FORT WORTH, TEXAS
   Gentlemen:
        We, the undersigned dealer, are attaching hereto an application for poultry finance executed by:
        George Gaas Rt 4 Caldwell, Texas
        _____
          (applicant)           (address)
        Said applicant wants financing on the following:
        Type of operation: Layers
        Feeding program: Complete
        Items for which
        financing requested:       1500 Day Old
                                _____
          Chicks, Feed.
   The undersigned has checked the equipment, facilities and also the experience of said applicant and believes them to be sufficient.
        Based on appraisal of said applicant through our acquaintance with him and the preliminary investigation through other ers who are acquainted with said applicant, it is the opinion of the undersigned dealer that said applicant is sound, both morally and financially, and meets the requirements of BURRUS FEED MILLS for poultry finance. If this application is approved, the undersigned dealer will exert every effort in seeing that the applicant fulfills all obligations in strict accordance with the terms of the BURRUS FEED MILLS standard finance agreement.
        We agree to the following if such application is approved:
        1. That all of the birds above referred to are to be on such finance program until all debt owing BURRUS FEED· MILLS and secured by such birds has been paid in full.
        2. To obtain a demand promissory note from the applicant covering each delivery approved for financing as reflected on the applicant's finance agreement promptly as each delivery is made and to forward such notes immediately to BURRUS FEED MILLS at the address indicated for it. All such notes shall bear interest at the rate of 6% per annum from the date thereof.
        3. To assist the applicant in marketing all birds, or eggs, at the best market price obtainable until all indebtedness of said applicant to BURRUS FEED· MILLS is paid in full.
        4. To be available for consultation with the applicant, on a call basis and at no expense to the applicant, from time to· time 'to assist him with management of said flock.

these agreements are:

"8. To be responsible for the collection of all finance notes taken from said applicant; further, the undersigned dealer guarantees collection, to the extent of *50%*, of all finance notes, including principal and interest, taken from said grower under the finance agreement, *such guarantee to be evidenced by a guaranty agreement and/or by endorsement of all said applicant's finance notes, as* BURRUS FEED MILLS *may* elect.

"9. Any obligations arising under this agreement or *any guarantee signed by the dealer, or any other matters with* BURRIS FEED MILLS *are to be payable in Dallas, Texas*, at the office of BURRIS FEED MILLS."

(Emphasis supplied.)

Appellant concedes in its brief that the principal legal question involved here is whether the provisions of the written contracts, and especially the provision contained in Paragraph 9 of each of them, are sufficient to establish the exception to the venue rule. Appellant also concedes that generally venue situations involving Subdivision 5 of Article 1995, V.A.C.S. involve suits on breach of a written contract whereby the written contract itself provides for payment in a particular county. Appellant argues, however, that there is no requirement that the breach for which plaintiff sues must necessarily arise out of the written contract sued upon in order to bring the action within the exception to the venue statute. Appellant relies upon such cases as Texas Mercantile Co. v. J. M. Radford Grocery Co., Civ.App., 250 S.W. 300; Peacock Military College v. Scroggins, Civ.App., 223 S.W. 232; Lange v. Jones, Civ.App., 261 S.W. 378; A. Harris & Co. v. Cook, Civ.App., 62 S.W.2d 205; and Burtis v. Butler Bros., 148 Tex. 543, 226 S. W.2d 825. These cases involve financial statements and other instruments designed to obtain credit and contain express agree-

5. To keep a running statement of the applicant's account and to alert him as his credit limit is being approached. Said applicant and the undersigned dealer each understands that under no circumstances will such credit limit be exceeded.

6. To fill out upon delivery of such birds a promissory note for insurance for the length of time such birds are to be financed and to forward such note properly executed by the applicant to BURRUS FEED MILLS at the address above indicated.

7. To secure a properly executed chattel mortgage from the applicant on all of his birds at the time that said applicant executes his finance agreement with BURRUS FEED MILLS and to mail said chattel mortgage to BURRUS FEED MILLS at the address above indicated.

8. To be responsible for the collection of all finance notes taken from said applicant; further, the undersigned dealer guarantees collection, to the extent of 50%. of all finance notes, including principal and interest, taken from said grower under the finance agreement, such guarantee to be evidenced by a guaranty agreement and/or by endorse-ment of all said applicant's finance notes, as BURRUS FEED MILLS may elect.

9. Any obligations arising under this agreement of any guarantee signed by the dealer, or any other matters with BURRUS FEED MILLS are to be payable in Dallas, Texas, at the office of BURRUS FEED MILLS.

The undersigned dealer acknowledges that he is fully acquainted with all of the terms and provisions of the finance program of BURRUS FEED MILLS, and accepts the same to the extent applicable to him.

By <u>Hein Feeders Supply</u>
<u>Pete Hein /s/</u>
(dealer's name)

I concur in the foregoing recommendation that financing be extended to the within named applicant, and agree that all commissions credited to my account on feed sold to said applicant, if such application be approved, may be deducted from my commission account if the said applicant fails to pay to BURRUS FEED MILLS all sums advanced to said applicant, as said sums are due and payable.

<u>S. E. Simmons, Jr. /s/</u>
(territory manager)"

ments to pay accounts, transactions and obligations in a definite county. In each of the cases the basic action flowed from the primary written agreement and not from a collateral contract, as in this case. While these cases express the correct law as applied to the particular facts evidenced therein, we cannot agree with appellant that they are determinative of the factual situation revealed by this record.

■■ The correct answer to the problem here presented necessarily depends upon the proper construction to be placed upon the written agreements relied upon by appellant. Can it be said that at the time appellee signed the various agreements that it was the mutual intent of both parties that any and all obligations, whether flowing from the written instrument itself, or otherwise, would be payable in Dallas County, Texas? To arrive at the true intent of the parties to these agreements we must review the instruments as a whole and not merely isolated portions thereof. In the recent case of Ervay, Inc. v. Wood, Civ.App., 373 S.W.2d 380, wr. ref. n. r. e., we reiterated what we had previously said in Davis v. Andrews, Civ.App., 361 S.W.2d 419, err. ref. n. r. e., relative to the "four corners rule" which says that the intention of the parties is to be gathered from the instrument as a whole and not from isolated parts thereof. We also directed attention to the rule of construction which directs a reviewing court to review the agreement as of the time it was made and not in the light of subsequent events. Fleming Oil Co. v. Anco Gas Corp., Civ. App., 217 S.W.2d 29; Burtis v. Butler Bros., Civ.App., 228 S.W.2d 938.

Applying these cardinal rules of construction to the various instruments before us we are impelled to the conclusion that at the time each of these instruments was executed by appellee it was the intent of both parties that appellee was to be obligated only in the event of certain contingencies which could occur at the election of appellant. Moreover, we are of the opinion that the parties intended that the obligations recited therein were to apply solely to the matters relating to guaranty only and did not, as contended by appellant, apply to any other matters or obligations of whatever kind or character which might come into existence in the future. A careful reading of the written instrument relied upon by appellant demonstrates that there is no obligation fixed on appellee unless and until appellant has elected to compel appellee to evidence his obligation by delivering a written guarantee agreement or by endorsement of the finance notes referred to in such agreement. There is nothing in this record showing that such election has been made. Absent such conditions precedent there is no obligation on the part of appellee to appellant concerning the guaranty of customer's obligation.

■■ To uphold appellant's contention that the provisions of Paragraph 9 to the effect that "any other matters with Burrus Feed Mills are to be payable in Dallas, Texas, at the office of Burrus Feed Mills" apply to other obligations than those expressed and contemplated by the parties at the time they executed the instrument, and especially to an open account such as that sued upon by appellant here, would do violence to the very basic law, often expressed by our Supreme Court, that a defendant shall be sued in his own county, and however many and important are the exceptions contained in the statute, an equal doubt between the exception and the rule is to be resolved in favor of the rule. The application of the exception must clearly appear. Venue may never be sustained by implication or by strained construction. Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825; Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969; Saigh v. Monteith, 147 Tex. 341, 215 S.W.2d 610; A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619; Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062; Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91; 43-B Tex.Jur., Sec. 14, pp. 124, 125, and cases therein cited.

To say that appellee, by signing the various guaranty instruments intended to and did contract and agree to pay appellant in Dallas County for any and all goods, wares and merchandise which he might thereafter purchase from appellant, would be giving a strained construction indeed to such agreements. We believe that the trial court was correct in holding, as a matter of law, that the instruments relied upon by appellant demonstrated affirmatively that no obligation existed on the part of appellee to pay the verified accounts sued upon in this case in Dallas County.

The judgment of the trial court is affirmed.

Affirmed.