Curtis HANKAMER, Appellant,

v.

DELTA LEASING & INVESTMENT
CORPORATION, Appellee.

No. 15862.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 25, 1972.

Rehearing Denied June 22, 1972.

Liddell, Sapp, Zivley & Brown, W. Robert Brown, Houston, for appellant.

Theo. R. Kirchheimer, Edward G. Murr, Houston, for appellee.

BELL, Chief Justice.

Appellee recovered judgment against appellant in the amount of $25,589.25 for rent found to be owed for the rental of mining equipment, plus an attorney's fee of $5,000.00. Judgment by default was recovered against Leroy W. Reed and he has not appealed.

Appellee sued Reed and Hankamer to recover the agreed rental for certain mining equipment allegedly leased to Reed and Hankamer to be used in reopening and operating a quicksilver mine in Mexico.

The record reflects that in April, May and June, 1966, Hankamer had advanced money aggregating $10,200 to Reed though the checks were made payable to New Almaden Quick Silver Company, S.A. This was a Mexican corporation. Hankamer testified half of this money was a loan to Reed and half was an investment. For the investment Hankamer was to receive one-half of the profits realized by Reed. Reed, under an agreement with owners of 49% of the stock in New Almaden, in consideration of his providing funds, up to $45,000.00, and equipment necessary for the reopening and operation of the mine, obtained 24½ percent of the stock in the corporation. Reed was to be repaid for his capital outlay out of the profits and when this was done title to the equipment was to vest in the corporation.

By a letter dated April 14, 1966, addressed to Hankamer, Reed acknowledged that in all matters pertaining to the corporation wherever his ownership, leasehold rights and profit sharing agreement appears as Leroy W. Reed, Trustee, Hankamer was to own one-half and the other one-half was to belong to the Lillian T. Reed Trust. There is no showing of ownership in Reed except for the corporate stock.

About September 2, 1966, Reed contacted appellee about leasing the necessary equipment. Appellee was unwilling to furnish the amount of financing asked without Reed obtaining a substantial person to also be responsible. Reed went to Hankamer. He was accompanied by Mr. Prescott, the representative of appellee. They had a "master lease" with them. Reed in Prescott's presence, according to Hankamer, asked Hankamer to sign as guarantor to get the equipment to increase production at the mine. Reed identified Prescott as appellee's leasing agent. Hankamer said he was assured by Reed that the equipment was available in Houston. Prescott was present and in a position to hear all that was said. There is no evidence of Prescott's having said anything.

After the conference on September 2, Reed and Hankamer signed the master lease. The instrument is stated to be a "Lease Agreement (Lease) . . . between Delta Leasing & Investment Corporation (Lessor) and Leroy W. Reed and/or Curtis Hankamer (Lessee) with its principal place of business located at 1406 Bank of the Southwest Building, Houston, Texas." The lease stated "Lessee" desired to lease from Lessor personal property (equipment) described in "Written Order A" and would want to lease other equipment from time to time. Order A was dated September 7. There were five other orders between September 7 and November 9. Each order shows Leroy W. Reed and/or Curtis Hankamer to be Lessee. Also it is shown to be an order under the

master lease. Also there is typewritten on the bottom of each: "Leroy W. Reed and/or Curtis Hankamer (Lessee)". Hankamer and Reed both signed each order below the typewritten designation. The equipment ordered was listed but the rental for each item is not shown. Rather the aggregate rental for all the items listed is shown together with the monthly rental. The rental term was for 36 months.

Paragraph 5 of the lease provides that "lessee" will inspect the equipment within three business days after delivery. If notice is not given within three days of defects or other proper objection it will be presumed, among other things, that "lessee" has accepted the equipment and it is in good order. Further it provides that lessor will be required to purchase some equipment ordered by lessee. It also provides that "lessee" directs that the equipment be delivered to it at its place of business "specified above". It is provided in paragraph 21 that the signature of any officer or managing agent, if lessee is a corporation, or of any partner or managing agent, if lessee is a partnership or firm, on this lease or any receipt for the acceptance of the equipment shall be binding on lessee. Subdivision (d) of paragraph 21 states the lease and the applicable order and supplemental orders contain the full, final and exclusive statement of the agreement between lessee and lessor relating to the lease of the equipment.

Subdivision (n) of paragraph 21 provides that "if there is more than one signer (exclusive of Lessor) of this Lease, whether as lessee or co-signer, their obligations will be joint and several, and the term 'Lessee' will include each such party, jointly and severally."

Paragraph 10 is a warranty by Lessor of peaceable possession and use of the equipment without interference by Lessor or those acting for Lessor.

For reversal appellant asserts the following:

1. The trial court's judgment was in error because the use of "and/or" in the lease in describing who is lessee is not sufficiently certain and definite to identify the lessee and the lease is therefore unenforceable.

2. The trial court's judgment was in error because the lease agreement was unenforceable for the following reasons:

a. Appellee failed to deliver the equipment to the address required by paragraph 5(b).

b. The consideration failed in whole or in part because the equipment never existed.

c. Appellee breached the warranties of possession and use set out in paragraph 10(a).

d. Appellant was a guarantor whose rights could not be affected to his disadvantage by acts of Reed and appellee.

3. The judgment for $5,000.00 as an attorney's fee is excessive.

■ There are no findings of fact or conclusions of law. We must, therefore, presume that the trial court found all facts in a manner so as to support the judgment if there is evidence of probative force in the statement of facts, which has been filed, to support such presumed findings. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769; North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795.

The evidence shows, as above set out, the loan of money made by appellant to Reed for use in reopening and operating the mine and the money invested by appellant. The loan and investment were made several months prior to the lease here involved. The instrument giving Reed an interest in the stock in the corporation and interest in the profits was dated in April, 1966. The letter from Reed to appellant setting forth that one-half of the rights appearing in Reed's name were held for ap-

pellant was dated in April, 1966. The effect of the testimony is that Hankamer was interested in profits from the mine. He was leaving up to Reed the matter of attending to the details of operating the mine and obtaining the necessary equipment for which Reed and appellant had both contracted as shown by the master lease and the orders subsequently made pursuant to said lease.

It appears that the equipment was not at the time of the lease actually owned by appellee, but the lease clearly contemplates a purchase of the necessary equipment. For each order of equipment made by Reed and Hankamer, as shown by their signature on each order, there was a receipt signed only by Reed showing a delivery of the equipment.

The effect of the evidence is to show that the Master Lease was placed by appellee with the Houston Bank & Trust Company, though it appears it was never formally assigned. As an invoice was received from an apparent supplier and a receipt showing delivery was received from Reed, appellee would pay for the equipment through the Bank. Hankamer paid no attention to the matters until after default when he was called on to pay.

We notice the evidence with regard to existence and delivery of the equipment. Order F, which was the last order, except for a truck which was ordered and delivered in February, 1967, covered a "Mercury Reduction Retort". Mr. Youdan, president of appellee, testified that sometime after final default and after payment, he caused an investigation to be made and was satisfied no such equipment existed. This order was for $4034.16. Other than this testimony with regard to this item, there is no positive testimony as to the non-existence of the other equipment ordered by Hankamer and Reed, receipted for by Reed, and paid for by appellee. Appellant, to show non-existence of much of the other equipment, relies on testimony that much of the equipment was not at the mine. Mr. Kitts, who worked at the mine, furnished this testimony. We do not specifically notice the items on the orders where the testimony shows some items were delivered and some not because an aggregate rental only is shown. Not at the mine, according to Kitts, were the 3 retorts appearing on Order B at a rental of $1978.92. The items in Order E at an aggregate rental of $2328.84 were not at the mine, but Mr. Hankamer testified he found them at Nogales, but he was not able to get them released because Mr. Reed only was authorized to obtain their release. It is not contested that the two trucks ordered were delivered as well as many other items.

Reed is in prison, but for what offense is not shown.

■ We have not specifically discussed the testimony of Youdan that appellee wanted someone to guarantee the account and of Hankamer that Reed told him, in the presence of Prescott, that appellee wanted someone to guarantee the account. Nor have we noticed the evidence that might have released a guarantor. Hankamer did not sign the lease or the orders as a guarantor. Neither did he plead he signed as guarantor. The master lease provides the lease and orders constitute the full, final and complete statement of the agreement and that the obligations of all signers shall be joint and several. This will not permit proof of signing as guarantor. It would violate the parol evidence rule, even if there had been proper pleading.

The contention is made that the use of the term "and/or" in describing who was lessee made the lease so indefinite as to render it unenforceable.

■ Two cases are cited which deplore the use of the term "and/or" in a contract or pleading. Such cases are not

deemed controlling. We do not think the use of the term in and of itself renders the lease indefinite and unenforceable. The term must be considered in the light of all the provisions of the contract. It is a cardinal rule of construction that the court will seek the intention of the parties by reference to all the provisions of the contract. Ervay, Inc. v. Wood, 373 S.W.2d 380 (Tex.Civ.App.-Dallas), ref., n. r. e.; Burrus Mills, Inc. v. Hein, 378 S.W.2d 85 (Tex.Civ.App.-Dallas), writ dism'd; Dedier v. Grossman, 454 S.W.2d 231 (Tex. Civ.App.-Dallas) ref. n. r. e. When the whole contract is considered, we think it inescapable that the parties intended to make Reed and Hankamer co-lessees who would be jointly and severally liable for the obligations placed on any co-signer. Subdivision (n), paragraph 21, above quoted, particularly supports such conclusion.

■ Appellant states the contract was breached by appellee because delivery of the equipment was not made to the place called for by paragraph 5(b) of the lease.

The evidence shows that Hankamer had nothing to do with the operation of the mine. He was relying on Reed. The master lease provided that the lessee within three days after delivery would make an inspection of the equipment and if no objection was made to lessor it would be conclusively presumed among other things that lessee had accepted the equipment. The co-lessee Reed in each instance signed an acceptance receipt. In the light of the evidence the court could well conclude he was authorized by Hankamer to do this. Appellant's cases are not applicable. They were cases where there was refusal or failure to accept because the merchandise was delivered to the wrong place.

■ Appellant plead failure of consideration as a defense. Our recital of facts at most shows a partial failure. This is not a total defense but the total price is subject to abatement pro tanto. The burden is on the defendant to prove the extent of such

failure. American National Bank of Houston v. American Loan & Mortgage Co. et al., 282 S.W. 169 (Com.App.), judgment adopted; Willis v. Bullitt, 22 Tex. 330; Harris v. Berry, 58 Tex.Civ. App. 276, 123 S.W. 1148 (Ft. Worth), n. w. h. Here under the terms of the lease it is conclusively presumed that the equipment was received and accepted because of the receipts signed by Reed. Further, in this appeal appellant has no point of error and makes no argument that the trial court erred in not allowing a pro tanto abatement in the rental.

■ The provision of the lease for possession and use contemplates the lessor, or those acting under it, will not interfere with the lessee's use of the property. There is no evidence of any such interference.

Appellee also plead estoppel, relying on the equitable doctrine that "he who trusts most loses most." Appellant agrees the doctrine is applicable but says that in applying it the court reached the wrong conclusion. The doctrine is discussed in the following authorities: Parma v. First National Bank of Cameron, 63 S.W.2d 692 (Com.App.), judgment approved; Sackenreuther v. Winston, 137 S.W.2d 93 (Tex. Civ.App.-Galveston), writ ref.; Luse v. Crispin, 344 S.W.2d 926 (Tex.Civ.App.-Houston), ref., n. r. e. To sustain appellant's position we would have to hold that there was no evidence to support presumed finding that appellee trusted Reed more than appellant. We need only notice the evidence that would support the court's action. Appellant had been acquainted with Reed for several years though he had had no business transaction with him prior to April, 1966. The acquaintance between them arose out of the fact that Reed's uncle was a longtime friend of appellant's father. Appellant signed the lease which expressly provided co-signers would be co-lessees and would be jointly and severally liable. On five different dates, at the in-

stance of Reed, he signed orders for equipment. He left up to Reed the acquisition of the equipment. He left up to Reed the operation of the mine. He never made any investigation at any time to determine how the enterprise for which he loaned money and in which he had invested by being entitled to stock in the corporation was being operated. He never visited the mine. He never checked to determine whether the orders he signed for equipment at various times, which he placed in the hands of Reed, were being filled though the lease showed equipment might be purchased. He placed Reed in a position where he could mislead appellee to its detriment.

We do not say appellee was without fault. We only hold that there was evidence of probative force to support the trial court's conclusion that appellant was more at fault and thus misled appellee to its detriment.

We have read all of the testimony relating to the attorney's fee allowed and are unable to say the sum of $5,000.00 found by the jury is excessive.

Affirmed.