### FIRST STATE BANK & TRUST COMPANY OF HOUSTON, Appellant,

v.

### Fred M. TANNER, Appellee.

No. 16291.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 11, 1974.

Rehearing Denied May 9, 1974.

**376**

Strickland & Gordon, Irving C. Stern, Houston, for appellant.

Bailey, Blum & Lipper, Joseph Lipper, Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit to recover on a dishonored check from an endorser. The case was tried to a jury and judgment was entered in favor of the defendant on the jury verdict.

In 1965 defendant approached the bank and requested a loan to pay off several personal notes held by the bank and for additional cash. The bank approved the loan subject to a valid first lien on certain real estate. City Title Company was brought into the transaction to issue a title policy. The evidence is disputed as to whether the plaintiff or the defendant selected the title company. The bank sent the title company a note for $4,800.00 to be signed by the defendant and his wife and a bank draft payable to the title company in the same amount to be disbursed when the title policy was issued. The title company deposited the check in its account and reissued a check dated April 16, 1965 payable to defendant, but delivered the check to the bank. The transaction was closed April 16, 1965 and on April 24, 1965 the defendant was called to the bank to endorse the check for deposit and retire $3,264.24 of debts. The check was returned to plaintiff on April 27, 1965. The title company was declared bankrupt.

The jury found: (1) that the City Title Company was selected by the plaintiff Bank as disbursing agent; (4) that the

Bank by accepting payment in full of the promissory note dated April 16, 1965 is estopped from holding the defendant liable on the check; (5) that the plaintiff failed to deliver the check in the amount of $4,498.00 to the defendant for replacement by a cashier's check; (6) that such failure constituted an estoppel as that term is defined. The trial court instructed the jury that " . . . estoppel arises whenever, by the fault of one party, another has been induced to change his position for the worse." The jury failed to find that the title company knew on April 16, 1965 that the $4,498.00 check was insufficient. It also failed to find that the bank, on April 16, 1965, had knowledge of such facts concerning the insolvency of the City Title Company; that the bank's action in crediting the check for $4,498.00 amounted to bad faith.

The bank contends that as a matter of law the title company was an escrow agent for both parties. There was admitted into evidence a copy of a letter from Mr. Hodges, a vice president of the bank, to Mr. Gordon, the attorney for the bank, as a business record. The letter reads:

> "The Bank is contemplating a loan to Mr. Fred M. Tanner, in the amount of $4,800.00 to run for ten years at 7%. The Bank will retain two points brokerage on the loan. The loan will be secured by an improved piece of property described as . . . on which we hold an appraisal in our file in the amount of . . . Mr. Tanner informs us the title to this property rests in his name only and he would prefer that City Title Company be used in closing . . ."

A letter from Mr. Hodges to the City Title Company was admitted which reads:

> "Enclosed is our bank money order No. 71894 in the amount of $4,800.00 which you are authorized to disburse when you are in a position to issue your title policy showing ours to be a first and superior lien on the subject property.
>
> "Disburse in accordance with instructions tendered by Gerald F. Gordon, and

retain two points brokerage for the Bank."

There is a letter from Mr. Gordon to the title company enclosing a $4,800.00 note, a deed of trust and Homestead Affidavit with instructions to require the execution of these records and that the title company file them for record immediately. The title company was then directed to collect charges for their premiums for recording, for taxes, for the mortgagee's title policy, for the tax certificates, for a mortgagee's fee of $96.00, and for attorney's fees. The title company was to retain, disburse, or forward to the bank these items as appropriate. The letter concludes:

"If there is any question in connection with this transaction, please call the writer prior to closing."

A mortgagor's statement signed by the title company shows that from the proceeds of the loan, $4,800.00, there should be deducted charges payable by the mortgagor for the title policy, recording fees, attorney's fees, bank's "two points," tax certificates and a survey, in the total sum of $402.00, leaving due to the mortgagor out of the proceeds of the loan the sum of $4,498.00. The title company drew a check on its general funds in this amount and forwarded the same to the bank. This check was subsequently presented to Mr. Tanner who endorsed it for deposit and thereupon gave to the bank his check in the approximate sum of $3,000.00 in payment of certain loans which he had with the bank. The bank then sent the check through appropriate channels for collection. Before the check was returned Mr. Tanner had withdrawn most of the funds from his personal account.

■ The title company did not receive or hold these funds as a true escrow. There was no escrow agreement and the title company owed no obligation to Mr. Tanner with respect to the funds which it was holding pending the consummation of the transaction. The title company was the agent of the bank to disburse the funds which it held in accordance with the bank's

instructions. City of Ft. Worth v. Pippen, 439 S.W.2d 660 (Tex.1969). The bank could not be a holder in due course against Tanner of a check issued to him by the bank's agent as a loan from the bank.

■ As a result of this transaction the bank had in its possession a note for the sum of $4,800.00 payable to the order of the bank and executed by Mr. and Mrs. Tanner. It also had a check which was endorsed by Mr. Tanner in the sum of $4,498.00 which had not been paid by the maker. Mr. Tanner had only received the latter sum. He elected to pay in full the note which was secured by a lien on his real estate. The jury found that by accepting payment of this note the bank became estopped from holding the defendant liable on the $4,498.00 check. The note and the check represent in equity the same obligation. It was merely evidenced by two writings. Once the note was paid in full, the obligation was discharged, and equity will not permit the bank to assert that Mr. Tanner is liable to it by reason of his endorsement of the check.

■ In Parma v. First National Bank of Cameron, 63 S.W.2d 692 (Tex.Com. App.1933), the court quotes with approval the following equitable maxim:

"When one of two persons, equally entitled to consideration as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who having readily at hand the means of protection, has failed to avail himself of them."

This doctrine has been recognized by this court and made the basis of several decisions. Hankamer v. Delta Leasing & Investment Corporation, 481 S.W.2d 491 (Tex.Civ.App.—Houston, 1st, 1962, writ ref. n. r. e.). Either the bank or Mr. Tanner must suffer a loss by reason of this transaction. The loss is occasioned by the default of the agent of the bank, who in this transaction was following the instructions of the bank.

The judgment is affirmed.