**J. Bruce HANCOCK et al., Appellants,**

v.

**TEXACO, INC., Appellee.**

**No. 896.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 27, 1975.

Rehearing Denied March 20, 1975.

## OPINION

YOUNG, Justice.

This case presents the question of whether one of the parties named as lessor can forfeit an oil and gas lease as to his interest only when written notice of lessee's default of a drilling covenant is given by him and some of the others but not all of the parties named as lessor.

J. Bruce Hancock and others sued Texaco, Inc., for a partial forfeiture and cancellation of an oil and gas agreement and to remove cloud on plaintiffs' title caused by defendant's failure and refusal voluntarily to furnish plaintiffs with a partial release of that agreement. The case was tried non-jury before the court on answers to interrogatories, admissions, and stipulated facts. From the trial court's judgment that they take nothing, the plaintiffs appeal.

In their only point of error, the appellants complain of the trial court's holding that the notice of forfeiture given by appellants to appellee under the oil and gas agreement dated June 28, 1938, was insufficient to effect a forfeiture of the agreement as to the interests of appellants. Consequently, they say, the trial court erred in not entering judgment declaring the agreement cancelled and forfeited as to appellants' interest and removing cloud from appellants' title.

This suit was initiated to terminate an oil and gas lease as to appellants' undivided interest in the F–10 zone, Magnet-Withers Field, insofar as it lies beneath Lot 8a out of Lot 2, Hardey's Subdivision of the William Pettus League, Wharton County, Texas.

During 1938 Lot 8a (10 acres) was jointly owned by Guy F. Stovall and R. H. Hancock. Appellants are the successors in title to the ½ interest of R. H. Hancock in Lot 8a. At that time Lot 8b (also 10 acres) was owned by J. E. Broussard, individually and as Trustee, and C. E.

Peter M. Lowry, McGinnis, Lochridge & Kilgore, Austin, for appellants.

William S. Clarke, Houston, for appellee.

Broussard and J. E. Broussard, Jr. as Trustees, subject to an oil, gas, and mineral lease held by Texaco, Inc.

On June 28, 1938, the named owners of Lots 8a and 8b executed and delivered a lease of these lots, creating a 20 acre unit, to F. M. Sayre and Walter Van Norman. That lease required the drilling of a well at a specified location to a depth of 5,600 feet, unless oil or gas were discovered in paying quantities at a shallower depth. The required well, completed in August of 1938, is referred to as The First Frio Sand Well and was drilled to a depth of 5,547 feet.

Paragraph 4(3) of the lease in question provides:

". . . should commercial oil production be discovered on the Withers Pool structure, Wharton County, Texas, within four thousand (4,000) feet of said well in a new sand, at a greater depth than the sand horizons now producing in said Withers Field, then and in that event lessee hereby bind and obligate themselves, within one year from date of such discovery to prosecute the necessary drilling operations of a well on said land to develop commercial oil production from such new or deeper sand horizon, said well for the production of such new or deeper production to be drilled and completed in such new or deeper sand horizon only and at no shallower depth. Should lessee for any reason make default in complying with the foregoing obligation to drill said well to the new or deeper sand horizon, and shall fail to remedy or correct such default within thirty (30) days from receipt by the lessee of written notice from lessor of the existence of such default, then and in that event lessee hereby agrees that this lease shall be forfeited and surrendered in so far only as such new or deeper sand horizon is concerned, and a release thereof shall be delivered by lessee to lessor."

On January 7, 1963, at a location within 4,000 feet of the First Frio Sand Well,

Texaco completed its No. 133 Pierce Estate Well in a deeper sand (F–10 zone, Magnet-Withers Field) than any producing in the Withers Field when the lease was executed June 28, 1938. Sayre and Van Norman failed to prosecute drilling operations within one year as required by paragraph 4(3). Further, Sayre and Van Norman failed to remedy their default within 30 days of receipt of written notice in 1964 from the Hancock and Broussard interests. Subsequently, in March 1965 Texaco acquired the leasehold estate that Sayre and Van Norman had under the agreement of June 28, 1938.

The parties to this action have stipulated that the only legal question presented in this action is whether the oil and gas agreement of June 28, 1938, is forfeited and surrendered as to the F–10 zone, Magnet-Withers Field, as a result of the failure of Sayre and Van Norman to comply with paragraph 4(3) of the agreement when written notice of the default was given to the lessee by some but not all of the parties lessor.

Appellants contend that notice was required only of those parties lessor who chose to declare a forfeiture as to their respective interests in said lease. We disagree.

We do not find the agreement in question ambiguous. The meaning of an unambiguous contract must be considered from its "four corners". Houston Lighting & Power Company v. Tenn-Tex Alloy & Chemical Corporation, 400 S.W.2d 296, 300 (Tex.Sup.1966). We consider the meaning of such instrument at the time it was made and not in light of subsequent events. Burrus Mills, Inc. v. Hein, 378 S.W.2d 85 (Tex.Civ.App.—Dallas 1964, writ. dism'd); Burtis v. Butler Bros., 228 S.W.2d 938 (Tex.Civ.App.—Amarillo 1950, no writ). The agreement provides:

". . . That this Agreement made and entered into this the 28th day of June, 1938, between J. E. Broussard, Individually and as Trustee for the Brous-

sard Trust, and C. E. Broussard and J. E. Broussard Jr., Trustees for The Broussard Trust, R. H. Hancock, Guy F. Stovall and the Texas Company, a corporation of Delaware, hereinafter called 'Lessor' and F. M. Sayre and Walter Van Norman, hereinafter called 'Lessee', . . ."

Paragraph 5 of the lease provides that "lessor" reserves a royalty of five-sixteenths ($\frac{5}{16}$) of oil produced and saved and a royalty of five-sixteenths ($\frac{5}{16}$) of gas sold or used. Paragraph 5 further provides for an increase in royalty and the method of payment of the royalty reserved by "Lessor".

Paragraph 10 provides that "Lessor" warrants title to "said land". It is significant to note that the description of the land which is subject to the agreement is as follows:

"Twenty (20) acres of land, being Lots 8–a and 8–b, each containing 10 acres of land, out of Lot Number Two (2) of Hardey's Subdivision of the Wm. Pettus League, Wharton County, Texas, and being a part of those lots and tracts as shown by the maps and plats of Hollywood Park as plotted and recorded by Augustus H. Jones."

The significance of this description is that no single party lessor could warrant fee simple title to the entire twenty acre unit. This is further indication that the term "Lessor" is a collective term used for all parties lessor as a group.

Finally, the signature of each individual party lessor is not designated "Lessor". On the contrary, following the collective signatures of the parties lessor there is the printed designation "Lessor".

■ After considering that the parties have given a special designation to the term "Lessor", have provided that "Lessor" shall be paid a gross royalty, have provided that "Lessor" warrants title to the entire unit, and have collectively signed the agreement as "Lessor", we conclude that paragraph 4(3) requires that notice of default be given by *all* parties lessor.

The soundness of this conclusion is further bolstered by the fact that paragraph 9 permits certain individual action by any of the parties lessor and clearly so indicates. As we have concluded, the parties to this agreement clearly indicated when action by all parties lessor was required and when it was not. Although appellant argues that the purpose of the notice provision is carried out when one party lessor gives notice of breach by lessee, it is the *agreement* by which the parties are bound. And we have construed "Lessor" in the agreement to mean that a declaration of forfeiture must be made by all parties lessor, not less than all. See Jameson v. Chanslor-Canfield Midway Oil Co., 176 Cal. 1, 167 P. 369 (1917).

Our conclusion is much like those reached by our courts in Parker v. Parker, 144 S.W.2d 303 (Tex.Civ.App.—Galveston 1940, writ ref'd) and Lander v. Wedell, 493 S.W.2d 271 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.).

■ Although we do not find the terms of this agreement ambiguous, we nevertheless are required to follow the rule in this state that if a forfeiture provision is capable of two constructions, one of which will effect a forfeiture, the provision is to be given the construction which will prevent a forfeiture. Ryan v. Kent, 36 S.W.2d 1007 (Tex.Comm'n App.1931); Wisdom v. Minchen, 154 S.W.2d 330 (Tex.Civ.App.—Galveston 1941, writ ref'd w. o. m.); See also Colby v. Sun Oil Company, 288 S.W.2d 221 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.